## EVANS v. REISER

No. 5145. Decided August 19, 1931. (2 Pac. [2d] 615.)

254

(See opinion on Petition for Rehearing at end of this opinion.)

*E. R. Callister* and *H. C. Allen,* both of Salt Lake City, for appellant.

*B. W. Musser, H. M Schiller,* and *Ned Warnock,* all of Salt Lake City, for respondent.

ELIAS HANSEN, J.

In this action the appellant and the respondent each claim that she received a plurality of votes cast for the office of county recorder of Salt Lake county, Utah, at the general election held November 4, 1930. The official ballots used at that election in Salt Lake county, Utah, contained four tickets, the Republican, Democratic, Socialist, and Liberty. The name of "Mrs. Helen F. Reiser" appeared upon the Republican ticket. The name of "Miss Jessie Evans" appeared upon the Democratic ticket. The name of "Eleanore Mackay" appeared upon the Liberty ticket. The Socialist ticket did not have a candidate for the office of county recorder.

After the election the board of county commissioners of Salt Lake county, acting as a board of canvassers, met and canvassed the returns as provided by law. The result of the canvass showed that Mrs. Reiser received 24,318 votes; that Miss Jessie Evans received 24,308 votes; and that Eleanore Mackay received 9,399 votes. Mrs. Reiser was declared elected, the county clerk issued to her a certificate of election, and in due time she qualified and assumed the duties of the office.

Thereafter, and within the time fixed by law, Miss Jessie Evans brought this action. In her complaint she alleged that the judges of election erred in failing to count various ballots in various designated districts to which she was entitled, and also erred in counting in favor of Mrs. Reiser various ballots in various designated districts to which she was not entitled. Miss Evans further alleged that she received the highest number of votes cast for the office of county recorder and prayed judgment that she be declared the duly elected county recorder.

In her answer Mrs. Reiser denied that the judges of election erred as alleged in the complaint. In turn, Mrs. Reiser alleged in her answer that the judges of election in various districts erred in failing to count ballots to which she was entitled and in counting ballots in favor of Miss Evans to which she was not entitled. Mrs. Reiser also alleged that she received the highest number of votes cast and prayed judgment that the complaint be dismissed.

Upon the issues thus joined the trial court proceeded to count the ballots cast in the various districts that were complained of. Soon after the trial began it was stipulated between the parties that the ballots of all of the election districts cast at the election, in so far as they affected the office of county recorder, be examined and considered. Accordingly, all the ballots were received in evidence. As a result of the count made by the learned trial judge, Miss Jessie Evans received 24,290 votes; Mrs. Helen F. Reiser received

24,231 votes; and Eleanore Mackay received 9,421 votes. Miss Evans was thus found to be entitled to the office and judgment was entered accordingly. Mrs. Reiser prosecutes this appeal from the judgment. At the trial 24,107 unchallenged ballots were counted for Mrs. Reiser, and 24,101 unchallenged ballots were counted for Miss Evans.

There were 571 ballots challenged. The ballots were marked as exhibits. Nine of the ballots were marked with letters and 562 with figures. All of the challenged ballots are made a part of the bill of exceptions, and are brought here for inspection and review. Of the challenged ballots, the learned trial judge counted 189 as legal votes for Jessie Evans and 124 for Helen F. Reiser. The remainder of the challenged ballots, numbering 258, were rejected as not being legal votes for either of the parties to this action. The ruling of the trial court as to each of the challenged ballots is assigned as error by one or the other of the parties to this proceeding, and thus it becomes necessary for us to review the ruling of the trial court as to each of the 571 challenged ballots.

There are 168 ballots which show that the voter voted for two of the candidates for the office of county recorder. In each of these 168 ballots the voter either placed a cross in a circle under a party emblem and, without drawing a line through the name of the candidate for county recorder under the marked circle, marked a cross in the square opposite the name of one of the other candidates for county recorder, or marked crosses in the squares opposite the name of two of the candidates for county recorder.

Compiled Laws of Utah 1917, § 2217, contains this provision:

"When only one officer for any office is to be elected, if the voter marks in squares opposite the name of more than one candidate therefor; or if, having marked the circle of one ticket, he shall mark the name of a candidate on another ticket without drawing a line through the name of the corresponding candidate upon the ticket beneath the marked circle, such vote shall not be counted for such office."

Under the plain mandatory language of the statute just quoted, the 168 ballots where two candidates have been voted for the office of county recorder may not be counted for that office. The trial court was right in refusing to count such ballots. The respective parties seem to concede that such ballots may not be counted because, while errors have been assigned by the party who deems herself adversely affected by the refusal of the court to count such ballots, the assignments in such respect have not been argued.

There are 59 ballots which are not marked with a cross-mark to indicate the choice of the voter for the office of county recorder. Instead of using a cross-mark, the voter has marked, in the place or places designated for the cross-mark, such marks as a circle, a check mark, "yes," "st." One ballot is marked with two semicircles with the convex side towards each other and a straight line extending from one of the semicircles to the other. On another ballot the voter has drawn, in the circle under a party emblem, what appears to be a crude picture of a person, and on still another ballot what appears to be a picture of a crab. Two ballots are so marked as to present the appearance of a wagon wheel with the printed circle under a party emblem serving as the rim and the lines drawn by the voter in the circle as the spokes. One circle contains a straight line which is scribbled over, and one ballot has large blue pencil marks scribbled within and extending far beyond the circle.

Compiled Laws of Utah 1917 provides that:

Section 2215. "The voting mark shall be a cross in the circle or square, and the cross required to be used in this chapter shall consist of two straight lines as nearly equal in length and crossing each other as near the center of each line as practicable."

Section 2221. "* * * A defective or incomplete cross mark on any ballot in ink in a proper place shall be counted, if there be no other mark or cross in ink on such ballot indicating an intention to vote for some person or persons or set of nominations other than those indicated by the first mentioned defective cross mark."

There can be no serious question but that it is competent for the Legislature to prescribe what mark or marks a voter must place on his ballot to indicate his choice of candidates for public office. No claim is made to the contrary. If a voter wishes to have his ballot counted, he must in good faith make an attempt to and succeed in marking his ballot in substantial compliance with law. There would seem to be no serious doubt but that such is the law. Counsel do not contend that the law is otherwise. It is urged, however, on behalf of the respondent, that a check mark may be said to be an incomplete or imperfect cross. We do not regard the contention sound. If the Legislature had intended that a check mark should be treated as a voting mark, it would have so provided. One who marks a ballot with a check mark has made no attempt to comply with the provisions requiring the voter to indicate his choice of candidates by marking such a cross as is defined by our statute. While a check mark may be converted into such a cross as is defined in our statute, so far as appears from the ballots now being considered the voter has made no such attempt. It is urged that a check mark is 50 per cent of a cross. So also is one straight line. Both a check mark and a straight line may be and usually are made without removing the pencil or pen from the paper. The check marks under consideration were so made. It may be observed that if all of the check marks on the ballots involved in this controversy were to be regarded as incomplete or imperfect crosses the results of this action would not be changed. If check marks were treated as voting marks, Miss Evans would gain three votes. The voting mark required by the statute consists of two lines. If it appears from an inspection of a ballot that the voter has attempted to make a cross in a proper place and has succeeded to such an extent that it can be said that the mark made is an incomplete or imperfect cross, the ballot should be counted, if not invalid for other reasons, otherwise not. None of the fifty-nine ballots marked as above indicated may properly be counted for either of the parties to this action, because the voter

failed to indicate his choice of any person for county recorder by marking his ballot with the voting mark designated by our statutes.

It is impossible within reasonable limits to specifically describe the markings upon the numerous ballots which are brought here as a part of the record on appeal. Various ballots, however, because of similarity of markings, may be placed in one class. We have for convenience and in the interest of brevity classified the ballots, but in so doing many ballots which have been placed in a given class might properly, because of the various markings thereon, be placed in one or more of the other classes.

Class 1. Each of fifty-five ballots has one or more erasures thereon. In some instances the erasure has evidently been done with a rubber; in other instances by some sharp instrument such as a knife; in still other instances by scribbling with a pencil over the word or mark sought to be obliterated.

In some instances the erasure is complete, in others the mark or word sought to be erased can be readily seen. In some instances holes have been rubbed or cut through the paper, while in others the texture of the paper has not been seriously affected.

Class 2. There are forty-eight ballots upon which one or more words are written upon the face of each ballot. The words appearing upon the ballots are such as "yes," "no," "void," "mistake," "except sheriff," "straight ticket," "Preece," "straight," "counted," "Kuminist," "prohibition enforced," "none other," "out," "Tony," "all," "now," "sc. Dem."

Class 3. Forty-five ballots have a line or lines drawn through a name or names on one or more tickets the circle of which is not marked with a cross. The number of names so scratched varies from ballots where all of the names of the candidates not voted for are scratched to ballots where only one name is thus scratched.

Class 4. Thirty-five ballots have diagonal lines forming a large "X" or "X-es" drawn through the names of the candidates appearing on one or more of the tickets the circle of which is not marked with a cross.

Class 5. Twelve ballots have one or more straight or curved lines drawn perpendicularly through the name of the candidates appearing upon one or more of the tickets the circle of which is not marked with a cross.

Class 6. Twelve ballots are marked thus: A cross is marked in a circle under a party emblem or in a square opposite the name of candidates. In addition to the voting mark or marks, the voter has marked upon his ballot check marks or horizontal straight lines. The check marks or lines are in some instances placed in the squares opposite the names of candidates voted for by a cross in a circle; in other instances, the check marks are placed in the square opposite the name of candidates not voted for, and in still other instances a cross has been marked in a circle and check marks or lines placed in the squares opposite the names of the candidates on two or more tickets.

Class 7. On nine ballots crosses are marked in the square opposite the name of two candidates for the office of county recorder. The voter has then drawn a line or lines through the name of one of the candidates. In some instances the line or lines extend both through the name and the cross in the square opposite the name. In other instances the line or lines extend through the name only.

Class 8. Eight ballots have numbers written upon their face.

Class 9. Each of four ballots has a cross marked in each of two circles. On each of these ballots the voter has, however, attempted to indicate his choice for county recorder by drawing a line or lines through one of the names of the candidates for that office.

Class 10. Each of eight ballots is marked with a cross within the space containing the party emblem, the circle, and

the name of the party, but in each instance the cross is not within and does not touch the circle.

Class 11. Each of seventeen ballots is marked with a cross in one circle and also marked with scribbling or a line or lines in one or more of the other circles.

Class 12. Six ballots are marked with a cross within a circle and another cross without the circle but within the space occupied by the circle, the party emblem, and the name of the party.

Class 13. Each of four ballots has a cross marked in a circle. The voter has also drawn two diagonal lines forming a large "X" through a part of the ticket, the circle of which is marked. Apparently the large "X-es" were made by the voter without any concern as to what names the two lines of the "X" passed through or failed to pass through.

Class 14. Five ballots are marked thus: Cross-marks are placed in the squares opposite the names of all of the candidates on one ticket. The voter has also scribbled or drawn a straight line in the circle above the names of the candidates voted for in the squares.

Class 15. Two ballots are marked with a cross in the circle above and another cross in the square opposite the name of a candidate for county recorder. A line is then drawn through the name of the candidate thus apparently voted for by the cross in the circle above and the cross in the square opposite the name.

Class 16. Each of five ballots has a line or lines drawn through the name or names of a candidate or candidates who appears upon the ballot and the same or a different name or names written upon the ballot above the name or names scratched out.

Class 17. On each of five ballots a cross is placed in each of two circles. The name of a candidate for county recorder appears under one of the marked circles but not under the other.

The markings upon the other challenged ballots are so unlike as not to admit of classification. We shall for the moment defer the consideration of the remaining ballots.

The result of this controversy depends upon the rule that is to be followed in determining what marks, if any, made by a voter upon his ballot renders it invalid. If any and all markings made by a voter upon his ballot, other than the voting mark expressly authorized by law, are to be disregarded, then and in such case the respondent is entitled to succeed in this action. If any mark made by a voter upon his ballot, other than the voting mark expressly authorized by law, destroys the validity of the ballot, then and in such case the appellant is entitled to succeed in this action. If some markings made by a voter upon his ballot, other than the voting mark expressly authorized by law, destroy the validity of a ballot and other markings do not destroy its validity, then and in such case the result of this controversy depends upon a determination of what markings do and what markings do not render a ballot invalid. To ascertain the proper rule to guide us in counting the ballots, resort must be had to the provisions of Compiled Laws of Utah 1917, title 27, chap. 6 (sections 2205-2237).

Section 2216 of the act provides that:

"Any voter desiring to vote for all the candidates upon any ticket may mark in the circle above that ticket, or in the squares opposite the names of all candidates thereon, or both such markings. If the voter does not desire to vote for a candidate on a ticket the circle of which he has marked, he may draw a line through the name of such candidate, and the cross in the circle shall count as a vote for all the other condidates on the ticket. To vote for candidates on two or more tickets, he may mark in the squares opposite the names of such candidates without marking in any circle; or he may indicate his choice by marking in the circle above one ticket, drawing a line through the names of such candidates on that ticket for whom he does not desire to vote, and marking in the squares opposite the names of the candidates of his choice upon other tickets. The voter may also insert in writing in the proper place in the blank ticket the name of any person for whom he desires to vote, and he shall be deemed to have voted for that person, whether he makes or fails to make a cross mark opposite

such name. The unnecessary marking of a cross in a square on the ticket below the marked circle shall not affect the validity of the vote. In case of a question submitted to the vote of the people, the voter shall mark in the appropriate margin or place a cross against the answer he desires to give."

It will be observed from the provisions of our statute just quoted that a voter may express his choice of a person or persons for a public office by marking his ballot in any one of the following manners: (1) Mark a cross in the circle above the ticket he desires to vote; (2) mark a cross or crosses in a square or squares opposite the name or names of a candidate or candidates for whom he desires to vote; (3) mark a cross in the circle above the ticket and a cross or crosses in a square or squares opposite the name or names of a candidate or candidates under the marked circle; (4) insert in writing in a proper place on the blank ticket the name of any person for whom he desires to vote; (5) if a cross is marked in a circle above a ticket, the voter may draw a line or lines through the name or names of any candidate on that ticket for whom he does not desire to vote. It is provided in section 2217 that "ballots thus marked shall be counted for the candidates designated by the marks in the squares, and for the candidates upon the ticket beneath a marked circle excluding the candidates through whose names the voter may have drawn a line." The statute also prescribes what shall be the effect of a ballot which is so marked that the voter has indicated his choice for more persons for an office or offices than there are persons to be elected to such office or offices. Thus section 2217 provides:

"When only one officer for any office is to be elected, if the voter marks in squares opposite the name of more than one candidate therefor; or if, having marked the circle of one ticket, he shall mark the name of a candidate on another ticket without drawing a line through the name of the corresponding candidate upon the ticket beneath the marked circle, such vote shall not be counted for such office. When two or more officers of the same kind are to be elected, if more squares opposite the names of candidates for such office are marked than there are officers to be elected to such office; or, if

the aggregate number of unscratched names of such candidates on a ticket, the circle of which is marked, added to the number of such candidates on other tickets whose names are marked, shall exceed the number of officers to be elected to such office, the ballot shall not be counted for any such candidates."

The statute prescribes not only what marks must be made by a voter upon his ballot to entitle it to be counted, but it also prescribes what shall be done with a ballot in the event it is marked in any manner other than that authorized by the statute. Section 2217 of the act further provides that, "when more than one circle is marked, the ballot shall be rejected," and that "any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected."

It will be noted from the language of the statute just quoted that a failure of a voter to properly mark his ballot may result in rendering his ballot partly or wholly ineffective. If the voter marks his ballot with markings authorized by law but in such a manner as to indicate his choice for more persons for an office or offices than there are persons to be elected to such office or offices, then and in such case the ballot may not be counted for such person or persons. On the other hand, if the voter places a mark in two circles, even though such marks be crosses, his ballot shall be rejected. So also, "any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected." The principal question that divides the parties to this controversy is concerning the construction or effect that should be given to the language last quoted. We shall therefore direct our attention to a consideration of that question.

It is clear that the provision which requires the rejection of any ballot marked by the voter in any other manner than as authorized by law is mandatory in form. The words "shall be rejected" are words of command. Taken in their usual and proper meaning they leave no room for choice or discretion. They are imperative. They must be held to have been used in that sense in the act under

consideration unless there is some other language in the act which indicates a different legislative intention. It is a cardinal principle of statutory construction that effect must be given, when possible, to each and all of the provisions of a statute.

Our attention has been called to the provisions of sections 2221 and 2222 of the act. The claim is made on behalf of the respondent that some of the provisions of these sections are in conflict with or modify the provisions now under consideration.

The first part of section 2221 provides that:

"if a voter marks in ink more names than there are persons to be elected to an office, or if, for any reason, it is impossible to determine the choice of any voter for any office to be filled, his ballot shall not be counted for such office."

This language does not give us any light upon what marks, if any, will render a ballot invalid. It conveys practically the same meaning as is conveyed in that part of section 2217, which reads thus:

"When only one officer for any one office is to be elected, if the voter marks in squares opposite name of more than one candidate therefor; or if, having marked the circle of one ticket, he shall mark the name of a candidate on another ticket without drawing a line through the name of the corresponding candidate upon the ticket beneath the marked circle, such vote shall not be counted for such office."

We can perceive of no conflict with the provision which requires that a ballot be not counted for an office, where, because of improper markings, the choice of the voter cannot be determined, and a provision which requires the rejection of the ballot because it is marked in a manner not authorized by law. The law authorizes certain marks to be placed in designated places. If the authorized marks are so placed as to make it impossible to determine the choice of the voter for a particular office, it cannot be counted for that office. On the other hand, if a prohibited mark or marks is or are made upon a ballot by a voter or if a permitted mark

or marks is or are made in a prohibited place or places upon a ballot by the voter, such ballot becomes a nullity.

It is further provided in section 2221 "that a defective or incomplete cross mark on any ballot in ink in a proper place shall be counted, if there be no other mark or cross in ink on such ballot indicating an intention to vote for some person or persons or set of nominations other than ■ those indicated by the first mentioned defective cross mark." This language deals with and is limited in its application to ballots marked with a defective or incomplete cross-mark. If the language is to be taken literally, it is also limited in its effect to ballots marked in ink. The effect of the language is merely that a defective or incomplete cross shall be given the same effect as a perfect or complete cross.

In the absence of a provision that a voter shall mark his ballot in ink, it is inconceivable that the Legislature intended that one rule should be applied to the counting of ballots marked in ink by a voter and a different rule applied where a voter marks his ballot with a pencil. Nor can it be that the Legislature intended that a ballot marked in a proper place with an incomplete or defective cross-mark should be counted without regard to other marks, while a ballot with a complete and perfect cross placed in a proper place should be rejected if it contained any prohibited mark.

Our attention has also been directed to the follow- ■ ing provision of section 2222:

"When the ballots and the poll lists agree, or, as above provided, have been made to agree, the board shall proceed to count the votes; each ballot shall be read and counted separately, and every name included in an marked ticket, set, or list of nominations, or separately marked as voted for on such ballot, *where there is no conflict to obscure the intention of the voter as aforesaid*, shall be read and marked upon the tally list, before any other ballot is proceeded with."

We are unable to perceive wherein these provisions are in aid of the determination of what ballots shall be and what ballots shall not be rejected. Section 2222 deals with the

counting of ballots. Obviously a rejected ballot is removed entirely from the counting, and section 2222 has no concern with such ballot.

None of the provisions relied upon by the respondent may be said to modify or conflict with that provision of section 2217 which requires the rejection of a ballot marked by the voter in any other manner than as authorized by chapter 6, title 27, Compiled Laws of Utah 1917.

On the contrary, other provisions of the act emphasize the provision that "any ballot marked by the voter in any other manner than as authorized * * * shall be rejected." Section 2217. Section 2207 provides that notices shall be prepared and posted instructing the voter "that identification marks or otherwise spoiling or defacing a ballot will render it invalid."

It has been held that a statutory provision which merely directs that notice be given to voters informing them that ballots will be invalid if they contain certain designated marks is not substantive law. *Turner* v. *Wilson*, 171 Cal. 600, 154 P. 2; *Sweetser* v. *Pacheco*, 172 Cal. 137, 155 P. 639, 641.

Be that as it may, the provisions of our statute which require the preparation and posting of notices to voters informing them that a ballot which contains an identification mark or is spoiled or is defaced is invalid cannot be overlooked in determining what the Legislature meant when it directed that "any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected." Obviously the Legislature would not direct that the voter be informed that a ballot which is spoiled or defaced or contains an identification mark is invalid unless it intended that such a ballot should be invalid. It is also clear that if effect be given to the provision that an identification mark renders a ballot invalid such a mark placed upon a ballot by a voter may not be disregarded by those whose duty it is to count the ballots.

It may be urged that in view of the fact that the Legislature has directed that the notice to be given to voters specifies that identification marks placed upon a ballot will render it invalid that therefore no other mark, unless the ballot is defaced or spoiled, will render it invalid. Our statute does not define what is meant by identification marks. An exhaustive review of the election laws of other states reveals a diversity of opinion as to what marks upon a ballot may be said to constitute identification or distinguishing marks. The conflict in the adjudicated cases may, in part, be accounted for by the difference in the language contained in the various statutes. A collection of cases dealing with such marks may be found in 20 C. J. 162-8; note to *Taylor* v. *Bleakley*, 55 Kan. 1, 39 P. 1045, 28 L. R. A. 683, 49 Am. St. Rep. beginning at page 240. And see the annotation to section 1211, Cal. Pol. Code, page 315 (Kerr's Small Codes of Cal.), where a large number of California cases are collected. See, also, 18 Cent. Dig., page 274, "Elections," § 166; Decennial Digests "Elections."

We shall not undertake in this opinion the fruitless task of reviewing the numerous cases dealing with distinguishing or identification marks. Suffice it to observe that an examination of the cases dealing with such marks shows the advisability of adopting a clear, definite, and simple rule for the guidance of those who are required to determine what ballots shall be counted and what ballots shall be rejected.

As generally understood, an identifying or distinguishing mark is such a mark as will enable a person from a description of the mark upon the ballot to single it out and separate it from the rest of the ballots. It is difficult to perceive of any marking on a ballot other than those permitted by our statute that may not serve as an identification or distinguishing mark.

At the election out of which this controversy arose, there were, according to the findings of fact made by the trial court 58,025 ballots cast for the persons who were candidates for county recorder. Of the ballots cast less than 1 per cent,

or 571, have been challenged by one or the other of the parties to this controversy. Of the ballots so challenged slightly less than one-half, or 227, may not be counted for the office of county recorder either because the voters have voted for two candidates for the office of county recorder or because the voters have not voted for any candidate for county recorder. Most of the remainder of the challenged ballots, or about one-half of the total, are questioned by one or the other of the parties to this controversy because they contain marks not authorized by law. There is probably not one of the ballots challenged because it contains markings not authorized by law that may not (from a description of the character of the mark or marks complained of and of the place upon the ballot where such work or marks may be found) be singled out and set apart from the rest of the ballots. Thus any mark placed upon a ballot other than as authorized by law may well serve as and in the instant case such a mark does serve as an identification mark. It should here be noted that our statute does not distinguish, as do some statutes, between marks that are placed upon a ballot for the purpose of identification and those marks that are not placed there for that purpose. Our statute condemns all marks not authorized by law which are placed upon the ballot by a voter without regard to the purpose of the voter. Indeed, it is difficult to perceive how those whose duty it is to count the ballots may ascertain the purpose the voter had in marking a ballot in a manner not authorized by law. Probably no one except the voter knows why he drew what appears to be a picture of a person in the circle of one of the ballots which is an exhibit in this case. Under the plain provisions of our statute, the purpose, if known, would not alter the status of the ballot. Effect may be given to all of the provisions of our election law if any mark upon a ballot be regarded as an identification mark except a cross in a proper place, a line or lines drawn through a name or names of a candidate or candidates under a circle marked with a cross, and writing a name in a proper place. There is no

other way to harmonize and give effect to all of the provisions of the act and therefore the act should be given such effect.

No claim is made, and no claim can reasonably be made, that the provisions of our statute which require the rejection of a ballot containing marks not authorized by law are not mandatory. From the very nature of things a ballot must be counted or rejected according to some fixed ■ rules. It is inconceivable that the Legislature would law down rules to be followed in the counting of ballots which are merely directory as to what ballots shall be rejected and what ballots shall be counted. If such were the case, the result of an election might well depend upon the whim or caprice of those whose duty it is to count the ballots. The provisions of our statute which directs that "any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected" is plain, certain, and definite. It is not in conflict with or modified by any other provisions of the election law, and it is mandatory. Under such circumstances there is no room for construction, and it is our plain duty to give it effect. As illustrative of the duty of the courts under such circumstances, we quote the following language from Black on Interpretation of Laws, Hornbook Series (2d Ed.) pp. 51-53:

"Where the language of a statute is plain and unambiguous, and conveys a definite and sensible meaning, it is the duty of the court to enforce it according to the obvious meaning of the words employed, without attempting to change it by adopting a different construction, based upon some supposed policy of the legislature with reference to the subject matter, or upon considerations of injustice or inconvenience resulting from the literal interpretation of the statute, or even to give the law that efficiency and due effect which it will lack when taken literally as it stands.

"In the case supposed, where the language of the statute is free from ambiguity and conveys a definite and sensible meaning, the courts should not hesitate to give it a literal interpretation merely because they have doubts as to the wisdom or expediency of the enactment. In such a case, these are not pertinent inquiries for the judicial tribunals. If there be any unwisdom in the law, it is for the

legislature to remedy it. For the courts the only rule is 'ita lex scripta est.' Neither have the judges any authority, in such a case, to put upon the statute a construction different from its natural and obvious meaning in consideration of the consequences which may result from it. Any evil consequences to the public which may flow from the statute may be considered when its meaning is doubtful, in order to give it a more beneficial construction, but when the legislative intent is clearly expressed, such consequences can not at all be considered."

All of the text-writers and the adjudicated cases dealing with the subject recognize the general rule as stated by the able author from whose work we have just quoted.

It is also earnestly urged on behalf of the respondent that the spirit and purpose of our election laws will not permit of following the letter thereof, that our statute should be given a liberal construction, so that ballots will not be rejected for slight or trivial causes. Let us briefly review our statute from that angle. Our state Constitution grants to every citizen of the United States, without regard to sex, the right to vote at a general election provided he or she

"shall have been a citizen for ninety days, and shall have resided in the State or Territory one year, in the county four months, and in the precinct sixty days next preceding any election," but "no idiot, insane person or person convicted of treason, or crime against the elective franchise, unless restored to civil rights, shall be permitted to vote at any election." Article 4, §§ 1, 2 and 6.

Our Constitution also provides that:

"All elections shall be by secret ballot. Nothing in this section shall be construed to prevent the use of any machine or mechanical contrivance for the purpose of receiving and registering the votes cast at any election: Provided, That secrecy in voting be preserved." Article 4, § 8.

Thus while a person possessing the necessary qualifications has a right to vote, such right is not absolute. The Legislature may prescribe reasonable rules and regulations which must be complied with before the right becomes abso-

lute. The right is to be exercised by means of a secret ballot, or other secret means. In order to carry into effect the constitutional provision requiring that secrecy in voting be observed, it is not only competent but it is the clear duty of the lawmaking power to enact such laws as will, in its opinion, effect that purpose. So long as the provisions enacted into law by the Legislature may be said to be reasonable, the plain duty of the courts is to give such provisions full force and effect, regardless of what views they may entertain about the wisdom of the law. The preservation of secrecy in voting contemplates not only that no one except the voter shall actually see the voter cast his ballot, but it also contemplates that when a ballot is cast it may not by reason of markings not authorized by law be picked out and separated from the other ballots. Among the purposes doubtless sought to be accomplished by the constitutional provision requiring that the secrecy of the ballot be preserved was to do away with, or render impossible the evil incident to the improper use of money, intimidation of voters and other fraudulent means that might be resorted to for the purpose of influencing the electorate. If a voter is required to mark his ballot in secret, with a designated mark or marks, and in a designated position upon the ballot, such evils cannot thrive. A person is not likely to enter into an agreement with a voter to pay for his vote unless such person has a way of ascertaining whether or not the voter has cast his ballot as agreed. And likewise a person is not likely to use threats to influence a voter to vote in a given way unless such person has the means of ascertaining the way the voter casts his ballot. If, however, a ballot is held to be valid upon which appears a mark not authorized by law, a means is provided whereby the ballot of a voter may be ascertained. A reference to a ballot which is made an exhibit in the instant case may serve to clarify what we mean. One and only one of the challenged ballots has the figure 17 inclosed within a circle written thereon. Suppose A desires to purchase B's vote. B is willing to sell his vote. A, however, is not willing to pay

unless he is certain that B votes as agreed. Therefore it is agreed between A and B that B shall place upon his ballot the figures 17 inclosed within a circle. A then arranges with some one who is present when the ballots are counted and a ballot is found marked as agreed. Under such circumstances, A would doubtless feel that he had secured just what he had bargained for and hence would be encouraged to continue such practice. What has been said concerning the marking of a ballot with the figures 17 applies to any of the other unauthorized markings upon the challenged ballots. It is because identification or distinguishing marks tend to destroy the secrecy of the ballot that ballots containing such marks are quite generally condemned by Legislatures and courts. In the instant case no claim is made that any voter was improperly influenced as to how he should cast his ballot, but if ballots are to be held valid which are marked in a manner not authorized by law such holding would tend to destroy the secrecy of the ballot and to open the door to those who desire to use sinister influence to control the electorate. It should here be noted that a mark upon a ballot which, upon its face, appears insignificant and innocently made, may serve an ulterior purpose as readily as a glaring and suspicious mark. Indeed, a person who is bent upon mischief is more likely to use the former than the latter mark. There may well have been good reasons for the Legislature using the all embracing language that it did use when it provided that "any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected."

It is further urged that an adherence to the letter of the law will result in the rejection of numerous ballots, and the will of a majority of the voters may not be given effect. If such a result follows an election, the fault is not with the law, but is with the voter who fails to inform himself concerning the law, or if he is so informed, fails or refuses to follow the law. The provisions of our election law which direct how a ballot must be marked and how it may not be marked are so simple that any intelligent person may readily

understand and follow its directions. If a voter does not
know how to prepare his ballot, he may call upon the judges
of election to assist him. If perchance through accident or
mistake a ballot is spoiled, defaced, or improperly marked,
ample provision is made for the voter to secure a second and
a third ballot. The fact that provision is made in our statute
for "one hundred ballots for every fifty or fraction of fifty
voters registered at the last preceding election in such elec-
tion district," and that "if any voter spoils a ballot, he may
successfully obtain others, one at a time, not exceeding three
in all, upon returning each spoiled one," tends to show that
the Legislature intended that if the voter improperly marked
his ballot he should not "correct" the mistake by an erasure
or scribbling upon the ballot thus improperly marked but
should secure another ballot.

Much is said in the briefs of counsel about the intention
of the voter as evidenced by markings upon various chal-
lenged ballots. It may be urged with considerable force that
a ballot which has such a word as "yes," "all," "straight,"
etc., written upon it by the voter in or near a circle above a
list of candidates, shows an intention to vote for the candi-
dates whose names are printed below such circle. It may
also be argued, and not without force, that a voter who has
marked a cross not within a circle but within the space occu-
pied by a circle, a party emblem, and a party name, intended
to vote for the candidates whose names appear upon the
ballot below such party emblem and name. So if a voter were
to write upon a ballot that he intends to and does vote for all
the candidates upon a designated ticket and signs his name
thereto there could be no question about the voter's intention.
But may it be said that under the provisions of our statute
effect may be given to an intention thus expressed? The
Legislature has prescribed that a cross shall be the voting
mark and has directed where the cross shall be placed. Not
content with such provision, it has directed that all ballots
not so marked shall be rejected. If the Legislature had in-
tended that the intention of the voter should be of controlling

importance, it would have so provided, but no such provision has been made. Under our statute the intention of a voter must be expressed in the manner prescribed and may not be expressed otherwise.

Section 2213 of the act makes provision for the appointment of judges of election. When a general election is to be held, the county commissioners of each county in the state are directed to appoint three qualified electors as election judges for each election district, at least two of whom shall be of opposite political parties. In making the appointments the county commissioners are directed to select the persons so appointed from lists submitted by the chairman or secretary of the county organization of a political party. From the manner of these appointments it may well be expected that the persons appointed will be of well-known political affiliations. That such is the case is a matter of such common knowledge that we may take judicial notice thereof. In the larger election districts two sets of judges may be appointed. It is the duty of the election judges to preside at the election, to assist voters who for any reason require assistance in preparing their ballots, to count the ballots, and to certify the result to the county commissioners sitting as a board of canvassers. It is thus the duty of the judges of election to pass upon the validity of all ballots cast within their election district. If the judges of election are to perform their duties intelligently and impartially, it is of primary importance that they have clear, definite, simple rules to guide them in the performance of their duties. We are of the opinion that the rules laid down by the Legislature in our election law meet these requirements. If, however, the judges of election are called upon to speculate as to what marks may be said to be identification marks and what marks are not to be so regarded, and what a voter did or did not intend by a mark which is not authorized by law, we may well expect uncertainty, confusion, and partiality to result. Without pursuing the matter further, we are of the opinion that not only the letter but also the spirit of our

statute relating to elections requires the rejection of a ballot which is marked by a voter in any manner other than that authorized by law.

All of the ballots which we have placed in classes 1 to 17, both inclusive, are marked in a manner not authorized by law and therefore they must be rejected.

For the same reason the following ballots must be rejected:

Exhibit 128, because it has what appears to be a cross mark in each of two circles. ■

Exhibit 318, because it is marked with a large check mark. ■

Exhibit 305, because two crosses are placed opposite the name of one of the candidates for county recorder one within the square and one without, and ■ also because circles are drawn around the squares opposite the proposed constitutional amendments.

Exhibit 198, because the ballot contains the imprint of a seal. The imprint appears in eight different places upon the ballot. The ballot was evidently folded when ■ the imprints were made, and thus all of the eight imprints resulted from a single imppression.

Exhibit 298, because it contains two check marks. ■

Exhibit 215, because three o's are marked opposite ■ the name of three candidates.

Exhibit 511, because it is marked with a cross not within a circle. The cross is in the space occupied by ■ the circle and party name and emblem.

Exhibit 362, because two circles are drawn around one of the circles above one of the tickets. The circles ■ which are marked upon the ballot are in red pencil.

Exhibit 61, because it has a line drawn from a circle (which contains a cross-mark) to the name of the candidate for sheriff on another ticket. An arrow head is ■ drawn at the end of the line.

Exhibit 311, because it has a large number of ink blots upon its face.

Exhibit 155, because the name of a candidate for county recorder has been scratched out although the circle above such name has not been marked. On this ballot the candidate's name which has been scratched out is written in the proper place on the blank ticket.

Exhibit 473, because it is marked with a straight line near one of the circles.

Exhibit 307, because it is marked with what appears to be a capital "N."

Exhibits 425 and 427, because figures are written on the face of each of these ballots opposite the names of candidates.

Exhibit 231, because it has crosses placed in a number of squares opposite the names of candidates and a heavy line is drawn perpendicularly through the crosses.

The various markings upon the ballots last above mentioned illustrate the difficulty, confusion, and probable partiality that is likely to arise if judges of election or courts who are called upon to count ballots are required to reject some ballots because they are marked with identification marks and to count other ballots because the markings are not identification marks.

If a rule is adopted which requires the rejection of ballots which are marked with identification marks but requires the counting of ballots which contain markings not authorized by law not amounting to identification marks, then and under such a rule we are confronted with such questions as these: Is the imprint of a seal on a ballot an identifying mark? Is a line, with an arrow head at one end thereof, drawn from a marked circle on one ticket to the name of a candidate for sheriff on another ticket, an identification mark? Is one or two check marks on a ballot a mark of identification? Do three small circles upon a ballot constitute a

mark of identification? If the size of the mark rather than its character is to be of controlling importance, how large or how small must the mark be before it falls within one or the other of the classes? Obviously the answers to such questions are fraught with insurmountable difficulties. In case of a close election such as this, a rule which requires the judges of election or the courts to determine whether a given mark is or is not an identification mark, and to reject or count a ballot according to such determination, must lead to confusion and open the door to the granting or withholding of favoritism. If effect be given to all of the language of our statute, the difficulties concerning what are and what are not identification marks disappear.

All ballots not marked as authorized by law are rejected.

We are not unmindful of the fact that an adherence to the letter of our election law requires the rejection of most of the challenged ballots, but there is no alternative unless we disregard the plain language of our statute and hold that a ballot shall be counted although marked in a manner not authorized by law. This we may not do.

It is suggested in one of the briefs of counsel that some of the markings upon the ballots were made by the judges of election and not by the voters. Thus, Exhibits 425 and 427 have figures opposite the names of the candidates on the Republican and Democratic tickets. It is suggested by counsel that these figures indicate the number of votes that were cast for the various candidates, but there is no evidence that such is the fact. One of the ballots upon which figures are written is a vote for the respondent and the other is a vote for the appellant, so that the rejection of these two ballots cannot affect the result. It is the duty of the judges of election to preserve the ballots without alteration, and in the absence of evidence to the contrary, we must assume that they have performed such duty. There is no evidence and no explanation as to how the imprint of a seal was impressed upon the ballot marked Exhibit 198. If the voter impressed the seal upon the ballot it should be rejected,

but if the seal was impressed on the ballot after it was deposited in the ballot box it should be counted. The impression is so blurred that the kind of seal used to make the impression cannot be determined. Except for the impression of the seal, the ballot is a vote for Mrs. Reiser. In the absence of any showing as to who made the impression, we have concluded that the ballot should be rejected. As to ballot marked Exhibit 311, it appears that the voter wasted ink on that ballot. Ink was used in marking the ballot and the ballot appears to have been folded before the ink was dry. The voter should have returned the ballot and requested another ballot. Because of ink being spilled upon the ballot it was spoiled.

There is a conflict in the adjudicated cases as to when a cross may be said to be in a circle. Under a statute similar to our statute the Supreme Court of Illinois has, by a number of decisions, held that the lines constituting the cross must intersect within the square or circle. In the case of *Sievers* v. *Hannah*, 296 Ill. 593, at page 596, 130 N. E. 361, at page 363, it is said:

"The statute requires that the voter shall make a cross in the square opposite the name of the candidate of his choice or in the party circle. This the only method provided by law for the voter to express his intention, and no ballot can be counted for any candidate where the elector fails to express his choice by placing a cross in the party circle or in the square to the left of the name of the candidate."

In *Allen* v. *Fuller*, 332 Ill. 304, 163 N. E. 675, 679, it is said that:

"The lines forming the cross in Respondent's Exhibit 44 extend partly within and partly without the square. The lines must cross within the square to comply with the requirement that the voter indicated his preference by a cross in the square."

To the same effect are the holdings in the cases of *Grubb* v. *Turner*, 259 Ill. 436, 102 N. E. 810; *Smith* v. *Reid*, 223 Ill. 493, 79 N. E. 148; *Kerr* v. *Flewelling*, 235 Ill. 326, 85 N. E. 624; *Neal* v. *Odle*, 308 Ill. 469, 140 N. E. 31.

Under a statute of New York it has been held that if a part of the line of the cross passes outside of the circle the ballot shall not be counted. In the case of *In re Houligan,* 55 Misc. Rep. 5, 106 N. Y. S. 205, at page 210, it is said:

"But, as I read the statute on that subject, its terms are not satisfied by placing of the crossing point or intersection of the lines within the circle, if any of the lines run outside the circle. The statute is explicit that the mark must be 'only in the circle.' To say that this means that only the point of intersection need be within the circle is to trifle with its express language and clear intention. If by an inspection it is apparent that any part of a line forming the cross mark passes outside the circle, the marking is not 'only within the circle,' and is in violation of the statute. It is not part of the duty of the inspector or of this court to modify the express provision of the statute for the reason that it is harsh, as applied to certain particular cases, or in order to save careless or incompetent voters from losing their votes at any particular election. The rules are prescribed by lawful authority and are justified by ample reasons, and strict compliance therewith should be required."

In the case of *State* v. *Peter,* 21 Wash. 243, 57 P. 814, it was held that a ballot marked with a cross in the space above the designation of a political party, so that one stroke of the cross extends into the space opposite such party's designation, cannot be counted for the candidates of that party; the mark not being a mark opposite the political designation of a group of candidates, within 1 Hill's Ann. St. & Codes, § 385, authorizing an elector to vote for all the candidates of one party by marking a cross opposite the political designation of such group of candidates.

Under a law of California which provided that a cross made partly within and partly without a voting square or space does not make such ballot void, it was held in the case of *Sweetser* v. *Pacheco, supra,* that:

"Under the law as it now is and has been ever since the year 1903, the only way in which a voter can indicate his intent to vote for a particular candidate is by stamping a cross in, or at least partly in (see Pol. Code, § 1211), the voting square, the provisions of section 1205, Political Code, being mandatory in this regard. Any other

method is legally ineffectual to express an intent to vote for a particular candidate, by reason of the express language of this section providing how, and how only, the intent shall be indicated."

In the case of *Wright* v. *Walker*, 197 Ind. 561, 151 N. E. 424, 426, it is said:

"In each of Contestor's Exhibits numbered 9, 10, 16, and 22, the cross was made outside of the square or circle in which it should have been placed, but extended to and touched the line defining the square or the circle. The statute provides that: 'If a pencil mark touches a circle or a square, it shall be counted on such circle or square, but a mark that touches no circle or square shall be treated as a distinguishing mark.' Section 7497, Burns' 1914; section 3, c. 41, Acts 1897, pp. 49, 51. These ballots were properly counted for the contestor."

In the case of *Frothingham* v. *Woodside*, 122 Me. 525, 120 A, 906, 911, it is said:

"No. 7: Cross slightly within but mostly without the Democratic party square. I do not see how I can lay down any arbitrary rule as to the proportion that shall be within the square in order to be valid, and I rule that if any portion is within the party square the ballot should be counted."

The great weight of authority, in the absence of a statutory provision to the contrary, is to the effect that the mere fact that the end or ends of a line or lines forming a cross extend beyond the square or circle does not destroy the validity of the ballot. *Hunt* v. *Campbell*, 19 Ariz. 254, 169 P. 596; *Grubb* v. *Turner*, 259 Ill. 436, 102 N. E. 810; *Kerr* v. *Flewelling*, 235 Ill. 326, 85 N. E. 624; *Naramore* v. *Sprague*, 48 S. D. 146, 202 N. W. 905.

Our statute provides that "the voting mark shall be a cross in the circle or square." Unless the lines forming the cross intersect within the circle or square, or in the case of an imperfect or incomplete cross the lines meet within the circle or square, it cannot well be said that the cross is within the circle or square. What we perceive to be the weight of authority and the better reason support such a rule. We are thus of the opinion, and so hold, that the

lines forming the cross must intersect or in case of an imperfect or incomplete cross must meet within the outer edge of the line defining the circle or square before a cross may be said to be a voting mark. If the lines forming the cross intersect within the circle or square, the cross should be given effect although an end or ends of a line or lines extend beyond the circle or square. In Exhibit 379 the voting mark upon which Miss Evans relies for a vote is an incomplete or imperfect cross. The lines meet outside of and below the square opposite her name, and therefore that ballot may not be counted as a vote for her. Exhibit 522 is marked with a cross which intersects some distance above the circle. The end of one of the lines of the cross enters the circle. That ballot must be rejected.

We deem it reasonably clear, as already indicated in this opinion, that our statute contemplates that incomplete or imperfect cross-marks shall be given the same effect as complete or perfect crosses. The following ballots should be counted for Miss Evans because the marks made thereon may be said to be imperfect or incomplete cross-marks; Exhibits 139 and 135. The following ballots should be counted for Mrs. Reiser because the marks made thereon may be said to be imperfect or incomplete cross-marks; Exhibits 454, 496, and 571.

Miss Evans claims the following ballots, but the mark upon which she relies may not be said to be a cross: Exhibits 506, 415, 494, 190, and 186.

Mrs. Reiser claims the following ballots, but the marks upon which she relies may not be said to be a cross: Exhibits 394, 416, 201, 359, 495, and 452.

If an inspection of a ballot shows that a voter has attempted to comply with the provisions of our statute wherein it is provided that "the cross-mark to be used in this chapter shall consist of two straight lines as nearly equal in length and crossing each other as near the center of each line as practicable," and if the mark made by the

voter may be completed so as to form the cross defined by the statute, then and in such case it may be said that the mark is an imperfect or incomplete cross. Some of the ballots which we have held should be counted have marks upon them in a proper place which marks resemble either the capital letter "V" or the capital letter "Y." The marks show that they were made with two strokes of a pencil. The remainder of the marks on the ballot which we have held should be counted show that the voter has attempted to retrace the lines of the cross. The retracing of the lines of a cross does not justify the rejection of a ballot. The ballots that we have held should be rejected are marked in a proper place, but the marks do not have the appearance of nor can they be converted into a cross such as is defined by our statute. In some instances the marks have the appearance of a capital "A," in other instances of a capital letter "H."

Mrs. Reiser claims as a vote for her ballot marked Exhibit 423. This ballot has marked on the back thereof "spoiled ballot." There is no evidence as to who placed the writing on the ballot. This ballot must be rejected for the same reason that a ballot with a word written upon its face must be rejected. Mrs. Reiser also claims as a vote for her Exhibit 366. The ballot shows that a very light straight line has been drawn in the circle under the Liberty party emblem. It appears that an effort has been made to erase the line. That ballot also must be rejected.

Ballots marked as Exhibits 276 and 503 are claimed by Mrs. Reiser. One of these exhibits is marked with crosses in the square opposite the names of the candidates on the Republican ticket. The voter then drew three lines perpendicularly through all of the crosses. That ballot must be rejected. The other ballot is marked in the same manner as the one just described, and in addition to such markings a cross is placed in a circle under the Republican emblem. That ballot must also be rejected.

Ballot marked Exhibit 104 is claimed by Miss Evans. The ballot is marked by drawing horizontal lines in the squares

opposite the names of all the candidates on the Democratic ticket, except the candidate for sheriff. One straight line is then drawn perpendicularly from the top of the ticket to the square opposite the name of the candidate for sheriff. The perpendicular line passes through the various squares and intersects the horizontal lines. A perpendicular line is also drawn through the squares below the square opposite the candidate for sheriff, which perpendicular line intersects the horizontal lines. This ballot must be rejected because the voter did not mark or attempt to mark his ballot with the voting mark prescribed by law.

Mrs. Reiser claims ballot marked Exhibit 185. That ballot is marked with a cross in the circle under the Democratic emblem. Lines are drawn through the name of Miss Evans and a cross is marked in the square opposite the name of Mrs. Reiser. A line is drawn through the "Helen" of Mrs. Reiser's name, and for that reason she is not entitled to that vote.

Miss Evans claims as a vote for her Exhibit 460. That ballot is marked with a cross in the circle under the Democratic emblem. Upon the Democratic ticket the name of John D. Rice, candidate for county attorney, is immediately below the name of Miss Evans. A line is drawn on the ballot somewhat diagonally so that it passes through the "John" of the name of John D. Rice, and extends up through the last three letters of Miss Evans' name. A cross is placed in the square opposite the name of the candidate for county attorney on the Republican ticket. There is no doubt but that the voter attempted to vote his ballot as required by law, and the fact that the line which passed through a part of Mr. Rice's name extended through three letters of the name of Miss Evans is not sufficient reason to deny her that vote. It should be counted for her.

Miss Evans claims as a vote for her Exhibits 93, 293, and 159. Mrs. Reiser claims as a vote for her Exhibit 88. Exhibit 93 is marked with a cross under the Republican

290

emblem, lines are drawn through the name of Mrs. Reiser, and some scribbling is marked in the square opposite her name. A cross is marked in the square opposite the name of Miss Evans. Exhibit 159 is marked with a cross in the circle under the Liberty party emblem. Lines are drawn through the name of Eleanore Mackay and a diagonal line is marked opposite her name. A cross is placed in the square opposite the name of Miss Evans. On Exhibit 293 a horizontal line is marked in the square opposite the name of Mrs. Reiser and a cross in the square opposite the name of Miss Evans. On Exhibit 88 a cross is marked in the square opposite the name of Mrs. Reiser and a very short line is marked in the square opposite the name of Miss Evans. None of these ballots may be counted for the office of county recorder.

The following ballots should be counted for Miss Evans: Exhibits 85, 43, 32, 574, 378, and 148. In marking Exhibits 85 and 32 the voter has used a red pencil, and in marking Exhibit 43 the voter has used a blue pencil. There is nothing in our law which directs the color of pencil or ██ ██ ink that must be used in marking a ballot. Exhibit 574 has a hole in the circle under the Republican emblem and a mark extending for some distance from the hole. Evidence was offered which tends to show that this condition of the ballot was caused by its being tied up with other ballots. The hole was caused by a wire being pushed through the ballot and the mark extending from the hole may have been caused by the wire.

Exhibit 148 is marked with a cross in the circle under the Republican emblem. Lines are drawn through the name of Mrs. Reiser and a cross is placed in the square opposite the name of Miss Evans. There is some slight evidence of an attempt to erase the cross in the circle. The ap- parent attempted erasure is so slight that it may have been caused by some other means. The word "cancelled" is written in blue pencil on Exhibit 378. One of the judges of election testified that she wrote the word on the ballot by mistake.

Mrs. Reiser is entitled to have the following ballots counted as votes for her: Exhibits 335, 230, A, 33, 320, 396, 451, 450, 499, 105, 547, and 414. The cross opposite the name of Mrs. Reiser on Exhibit 335 intersects on ▬ the line which forms one side of the square and both of the lines of the cross enter the square. The one line of the cross on Exhibit 230 in the circle under the Republican emblem is not distinct but it can be seen. The voter has marked Exhibit 33 with a blue pencil. As heretofore stated, the law does not direct the color of pencil or ink that must be used by a voter. The only objections to Exhibits 499 and 320 are that the lines of the crosses which are placed in the proper places are so long that they extend some distance beyond the square or circle. On Exhibit 396 a name for county sheriff has been written in the proper place on the blank ticket, and lines are drawn through the name of the candidate for sheriff on the Republican ticket. Such markings of a ballot are expressly permitted by our statute. Exhibits 451 and 450 have the word "cancelled" written with a red pencil upon the face thereof. Judges of election were called who testified that the words were so written by one of the judges by mistake. There is a statement signed by the presiding judge of election on the back of each of these ballots to the effect that the ballot was canceled by mistake. Exhibit 457 is marked with a cross in the circle under the Republican emblem. A line is drawn through the name of the candidate for sheriff on that ticket and a name is written in the blank space left for county sheriff on the Socialist ticket. The only candidates whose names are printed on the Socialist ticket are a candidate for the short and long term for Congressman, and a candidate for Justice of the Supreme Court. The rest of the ticket is left blank with printing above each blank space indicating the officers to be elected. Our statute provides, section 2216, that "the voter may also insert in writing in the proper place on the blank ticket the name of any person for whom he desires to vote, and he shall be deemed to have voted for that person, whether he makes or fails to make a cross mark op-

posite his name." The Socialist ticket, on the ballots used at the election held in 1930, was, with the exceptions indicated, a blank ticket. The blanks left upon that ticket were in the nature of an invitation to the voter to write names in the blanks. When blanks are left on a ticket, a voter may write in a name in the blanks so left without invalidating his ballot. Exhibit 414 has a part of the top torn off. We must assume that his ballot was not so torn when it was handed to the judges of election after the voter had marked his ballot. The judges of election are required to tear off the stub of the ballot after it has been marked and before it is placed in the ballot box. If the ballot was torn before it was handed to the judges of election, it is difficult to see how the stub could have been attached. In the absence of proof to the contrary, it must be assumed that the judges of election performed their duty, and if they performed their duty Exhibit 414 must have been torn after the ballot was marked by the voter. Exhibit 105 is marked with a cross in the circle under the Republican emblem. Lines are drawn somewhat diagonally through the name of the Republican candidate for Congressman and the candidate for Congressman on the Democratic ticket is properly voted for. The fact that the lines are drawn somewhat diagonally through the name of the candidate does not vitiate the ballot. Each of Exhibits A and B is marked with a cross in the circle under the Republican emblem. Exhibit A has the word "void" written on its back, and Exhibit B has the word "spoiled" written on the back thereof. Both of these ballots are from district No. 3. The judges of election for that district were called as witnesses and testified. Their testimony tends to show that one of the ballots was returned by a voter because it was not properly marked and another ballot given to the voter. While the evidence is not entirely satisfactory, we are of the opinion that the trial judge properly counted one of the ballots for Mrs. Reiser and rejected the other.

We have thus considered and reviewed all of the challenged ballots. Of the challenged ballots, 9 should be counted

for Miss Evans and 15 for Mrs. Reiser. Miss Evans received 24,101 votes which were not challenged, and she being entitled to 9 of the challenged ballots, the total legal ballots cast for her at the election was 24,110. Mrs. Reiser received 24,107 votes which were not challenged, and she being entitled to have counted for her 15 of the challenged ballots, the total legal votes cast for her at the election was 24,122. Mrs. Reiser thus received 12 more legal votes than did Miss Evans.

Before concluding this opinion there are two other matters which deserve brief mention. The ballot which is marked as Exhibit D was cast by an absent voter in election district 179. The ballot was marked as the official ballot for district 177. That ballot was marked in a manner not authorized by law. We have held that it should be rejected. Under such circumstances it is not necessary to further discuss that ballot.

The respondent contends that none of the ballots cast in election district 54 should be counted. In that district the returns show that Mrs. Reiser received a substantial majority of the votes cast. The irregularity complained of consisted of the judges of election failing to comply with the following provisions of our election law. Section 2222 provides:

"As soon as the polls at any election shall have finally closed, the judges shall immediately open the ballot box and proceed to count the votes polled, and the counting thereof shall be commenced and continued until finished before the judges shall adjourn. They shall first count the number of ballots in the box. If the ballots shall be found to exceed the number of names on each of the poll lists, the judges of election shall then examine the official indorsements on the outside of the ballots without opening the same, and if, in the unanimous opinion of the judges, any one or more of the ballots in excess of the number on the poll lists be deemed not to bear the official endorsement, it or they shall be put into a separate pile by themselves and marked 'excess ballots.' If there is still an excess of ballots, they shall be replaced in the box, and one of the judges, without looking, shall draw out from the box a number of ballots equal to such excess, and the same shall be laid aside and not counted. When the ballots and

the poll lists agree, or, as above provided, have been made to agree, the board shall proceed to count the votes. * * *"

It is made to appear that the judges of election in that district failed to compare the number of ballots with the poll lists. There is also evidence which tends to show that in that district there were six more ballots in the ballot boxes than there were names of persons on the poll lists. The ballots which were marked as Exhibits U1, V1, W1, X1, Y1, and Z1, were found in the ballot box, but each of the six ballots was marked on the back thereof as rejected. One of the judges of election testified that she marked the word "rejected" on each of the six ballots because they were incorrectly marked. We agree with the judges of election that all six of the ballots should be rejected, and we have heretofore so held.

There is no evidence that any ballots were improperly cast in election district 54, unless it can be said that there were more ballots in the ballot boxes than there were names on the poll lists. Appellant attempts to explain the discrepancy by arguing that the judges of election failed to write on the poll lists the names of some of the persons who voted.

The respondent contends that if our statute is to be construed strictly as to how a voter must mark his ballot, so also should it be construed strictly as to how the judges should proceed to count the ballots, and if the judges of election of any election district fail to proceed to count the ballots as directed by law, none of the ballots of such district should be counted. The contention is not sound. There is a vast difference between a rule which requires the rejection of a ballot because the voter does not mark it as required by law, and a rule which would require the rejection of all the ballots of an election district because the judges of election have failed to comply with the law. A voter controls his own actions and may mark his ballot as he chooses, but he has no control over the actions of the judges of election. It is inconceivable that judges of election

may, in the absence of proof of improper voting, nullify all the votes of an election district by failing to strictly comply with the law. The adjudicated cases, so far as we are informed, all hold against respondent's contention. As stated by this court in the case of *Hardy et al.* v. *Beaver City et al.*, 41 Utah 80, 125 P. 679, 682:

"The electors cannot be disfranchised by declaring their votes void for an act or omission of some election officer, or some one else, unless such act or omission violates some express constitutional or statutory provision, or amounts to intimidation or fraud."

In this case if the judges of election had drawn from the ballot box six ballots (the number which respondent claims were excessive in district 54), and if all the ballots so drawn had been votes for Mrs. Reiser, and hence deducted from her plurality, still the result of the election would have been the same.

Under such circumstances the respondent may not be heard to complain. The failure of the judges of election to draw six excessive ballots from the ballot box in district 54 may not be taken advantage of by the respondent where, as here, it appears that the failure of the judges of election to perform their duty in such respect did not and could not change the result.

From what has been said it follows that the judgment should be and it accordingly is reversed. This cause is remanded to the district court of Salt Lake county with directions to recast the findings of fact and conclusions of law to conform to the views herein expressed and to enter judgment accordingly. Appellant is awarded her costs.

FOLLAND and EPHRAIM HANSON, JJ., concur.

STRAUP, J.

I concur. Eliminating all ballots and not counting any of them where the voter voted for two candidates for the office of recorder—we are all agreed on that—and considering all other challenged ballots in determining what of them

should be rejected and what counted, I, by reason of the statute and in harmony with the prevailing opinion, base my result on the following:

1. All ballots containing writings, whether of words, letters, or figures, other than the writing of a name or names in the blank ticket of a person or persons voted for, and not shown to have been written on the ballot by the election judges, or by one other than the voter after the ballot left his hands, should be rejected.

2. All ballots containing blotches, scribblings, scrawls, or drawings, in the circle or square of a ticket, intentionally put there by the voter by pen and ink or pencil or otherwise should be rejected.

3. All ballots, though a cross-mark is in a circle of a ticket or in a square opposite a name on the ticket, yet where the voter drew lines or scrawls over the cross-mark, or scribbled over it, or with pen or pencil or other substance intentionally blotched or blotted or scribbled over the cross-mark or over the circle or square, or drew lines or circles around the cross-mark or the circle or square, or scribbled and blotched circles and squares or drew lines around them on other tickets, or intentionally and indiscriminately drew scrawls or lines up and down or over tickets or a portion of them, or with pen or pencil or other substance scribbled or blotched, or drew characters on them other than voting marks as defined by the statute, should be rejected.

4. All ballots containing erasures made by a voter in a circle or circles, or in a square or squares, whereby the paper of the ballot is cut through, or the texture of the paper destroyed or substantially affected, should be rejected; such a ballot, if not mutilated, being a defaced or spoiled ballot.

5. Any pronounced or substantial mark or markings of any kind, other than as prescribed by the statute in voting, put on the ballot willfully and intentionally by the voter vitiates the ballot and requires it to be rejected.

6. A cross-mark by the voter put outside a circle or a square, or which merely touches a circle or square, cannot

be counted as a voting mark. Nor under the great weight of authority, under statutes similar to ours, is it enough if only one or two end lines of the cross-mark is within the circle or square. To be a voting mark the intersection of the cross lines must be within or at least on the line of the circle or square. In such respect we do not go to the extent as do some of the courts that though the intersection of the two lines of the cross-mark is within the circle or square, yet, if one or more of the end lines extend beyond or are without the circle or square, the mark cannot be considered a voting mark.

7. Check marks or small circles or mere lines or other characters or markings, not amounting to a cross-mark as defined by the statute, placed by the voter in, or near or along the side of, a circle or square or squares, cannot be considered a voting mark and as such cannot be counted.

8. A cross-mark in a circle or square which is merely defective or incomplete should be considered a voting mark, if by the marking or markings an intent is evident to make a cross-mark. But I cannot regard a mere check mark, or a mere line, or a scrawl or scrawls, or a small circle, or a letter or a word, or a blotch, or scribbling, a defective or an incomplete cross-mark.

9. Three or more or a number of distinct and separate lines in a circle or square may not be considered a voting mark, unless by the marking it is evident that the extra lines made by the voter are a mere retracing of a cross-mark in a circle or square to make the cross-mark more distinct or complete.

10. A ballot containing two or more separate and distinct cross-marks in a circle or square, unless as a result of a mere retracing of a cross-mark, is to be rejected. The statute permits but one, not several, cross-marks in a circle or square.

11. A ballot containing a tear, if otherwise not defective, is not to be rejected, unless the tear is shown to have been made by the voter.

12. Where it is apparent that a cross-mark, though irregular, was made by a nervous or shaky hand, or while the ballot was resting on a rough board or the like when the mark was made, the ballot is not to be rejected if a cross-mark is discernible and the intersection of the cross lines is within or on the line of the circle or square, and is not otherwise blotched, scrawled, or scribbled over.

13. Crossing out a name on a ticket and writing a name above or below the name crossed out is not marking a ballot as provided by the statute and may not be counted.

14. Small blotches of ink on a ballot apparently as the result of accident or droppings from the pen, or of folding the ballot, or other apparent mere accidental marks on the ballot, do not invalidate the ballot. But where the blotches apparently are the result of spilling ink on the ballot, or of an intentional daubing or blotching a ballot with a cork, stopper, or other substance wet with ink, or as the result of scribbling, or of an intentional daubing or blotching with pen and ink, or pencil, the ballot becomes a defaced or spoiled ballot and should be rejected.

Upon such consideration, which is in accord with the weight of judicial authority in jurisdictions having statutes similar to ours, counting or rejecting the challenged ballots— except those voting for two persons for recorder—for or against the contestant and contestee, gives the contestee a clear plurality of from ten to fifteen votes, depending upon a consideration of seven or eight ballots, which, if rejected, will give the contestee a plurality of at least ten votes, and if counted, some of which are favorable to the contestee and some favorable to the contestant, will give the contestee a plurality of fourteen or fifteen votes.

As stated in the prevailing opinion, what chiefly divides the parties is dependent upon what rule is considered in determining the validity of a ballot. The argument of the contestant is that if a ballot is found with a cross-mark or a mark resembling it within or partly within or touching the circle of the ticket on which the name of either of the

parties appears, or where any kind of a mark resembling a cross-mark is within or partly within or touching a square opposite her name, and not anything else appearing on the ballot in conflict therewith or that the voter voted for another for the same office, the ballot should be counted, no matter how otherwise it may have been marked, blotched, scribbled, scrawled, or what language, word, letter, or figure may have been written on the ballot by the voter. The argument is carried even to the extent that though the word "yes" is written, instead of a cross-mark made, in a circle, the ballot should be counted, if on it not anything else appears to be in conflict therewith. In other words, in counting or rejecting a ballot, the contention is made by the contestant that the intention of the voter is the controlling factor, if such intention can be gathered from the face of the ballot, regardless in what manner the voter marked or prepared his ballot, unless it clearly is shown, not that some mark or marks or writing put on the ballot by the voter may serve as an identification of the ballot, but that such or some mark or writing was willfully and intentionally put on the ballot by him for the purpose of identifying it. Because of our statute, and as pointed out in the prevailing opinion, I cannot agree to that. There are some statutes which provide that in determining the validity of a ballot the chief and controlling factor is the intention of the voter as disclosed by the ballot, though the markings of it may not be in compliance with the statute, unless it clearly is shown that such or some mark or writing was put on the ballot by the voter with the intention and for the purpose of identifying it. I do not think our statute permits of such an interpretation. It is not a question of giving the statute either what is termed a strict or a liberal construction. The statute is to be taken and accepted what its language reasonably and fairly imports, and is not to be enlarged or abridged to meet exigencies of a particular case. The statute plainly and specifically points out how the intention and choice of the voter shall be expressed or indicated. He may not properly do it any other manner. As

to that the Legislature has spoken and every voter must in substance and spirit comply with it.

Except writing the name of a person or persons for whom he intends to vote in the blank space of the ballot provided for such purpose, I think a voter is not privileged to write anything on the ballot, and if he does so, he destroys his vote. And if a voter, instead of indicating his choice by a cross-mark in a circle or in a square or squares, attempts to do so by writing "yes" or "no" or "straight" or other language to indicate his choice, he is marking the ballot in a manner not permitted by the statute and invalidates the ballot. So, too, instead of indicating his choice as by the statute provided, the voter attempts to do so by scribblings, drawings, scrawls, or blotches, in circles and squares, drawing straight or curved or irregular lines over tickets on the ballot from top to bottom in some instances only over a portion of them, blotting circles and squares, some with pencil marks, others with ink as though blotted with a cork or stopper wet with ink, making erasures in circles or squares, some as though done with a knife, others with a hard or rough substance, in some instances cutting or tearing the paper of the ballot and in others destroying the texture of it, spilling ink on the ballot, placing a seal on it, putting not one but several distinct cross-marks in the circle, or placing cross-marks outside the circle or square, etc., he thereby mutilates, or defaces or spoils the ballot, or marks it in violation of the statute, and invalidates the ballot. None of such markings as here made, except perhaps as to one ballot spilling ink on it, in no sense was made accidentally or unintentionally. To the contrary, it is evident that all such markings were willfully and intentionally made by the voter, and all may well serve as an identification of the ballot, whether the marks or writings were so put on the ballot for such purpose or not. No one may successfully claim that a voter writing "yes," or "no," or "prohibition enforced," or writing other words, letters, or figures on a ballot, or drawing lines with arrow heads at one end or curved or irregular lines over a ballot, or scribbling, blotch-

ing, and blotting squares and circles with a pencil or pen, or drawing characters in them, is accidental or unintentional. If a voter chooses to so willfully and intentionally deface or spoil his ballot, and fly in the very teeth of the statute in preparing his ballot, he must suffer the consequences. Language of the statute may not be bent and stretched to excuse such nonsense and permit the ballot to be counted.

Some of the divergent views of the parties relate to certain markings or characters in circles or squares as to whether they are mere retracings of a cross-mark, or whether they may be regarded as mere defective or incomplete cross-marks. The prevailing opinion proceeds on the theory, and in that I fully concur, that where it is fairly or reasonably evident by an inspection thereof, that the marking is a mere retracing of a cross-mark, or is a mere incomplete or defective cross-mark, the marking is regarded a voting mark and the ballot counted, if not otherwise defective. Such rule is applied to both parties, where a retracing or a defective or incomplete cross-mark is fairly apparent; and is applied to a defective marking resembling the letter "Y" or the letter "V," with one or two of the lines slightly or perceptibly extending below the union of the two lines, and where it is apparent the character was made with two strokes of the pencil or pen. But such rule is not applied to a mere check mark clearly made with but one stroke of the pen or pencil and without lifting it and where it is evident there was no attempt or intention to make a cross-mark but an intent to make a mere check mark, or some mark other than a cross-mark, such as drawing or marking, in a circle or square three or four or more separate and distinct lines or only one line or small circles or other characters, with no apparent attempt or intent to make a cross-mark, or by scribbling or blotching the face of the circle or square with a pen or pencil or other substance.

As to a few ballots a difference of opinion may well arise as to whether the markings are a defective or incomplete cross-mark and as to a few whether the markings are a

mere retracing of a cross-mark, in which case and where there is a substantial doubt it is resolved in favor of the validity of the ballot and the ballot counted. There are about as many ballots of such character counted for the contestant as for the contestee. If all ballots of such character favorable to the contestee were rejected and all such favorable to the contestant counted, the final result still gives the contestee a plurality.

There were three candidates for the office of recorder, all women. The printed name of each was on her respective ticket. In a few ballots a cross-mark was placed in the square opposite the name of one of them, a cross-mark in a square opposite the name of another, and then a line drawn through the name of such other and through the cross-mark opposite her name. If such ballots are rejected, the contestee would lose about as many ballots as would the contestant, and if counted the one would gain about as many as would the other. In either event, the final result would not substantially be changed.

I thus concur in reversing the judgment and in the direction that the complaint be dismissed and that a judgment be entered in favor of the contestee.

CHERRY, C. J. (dissenting).

I dissent. The record conclusively shows that Miss Evans was the candidate for whom the largest number of voters plainly intended to vote for the office in question. Whether ballots plainly intended for her shall be counted or not is the question to be decided. In my opinion a correct and reasonable interpretation of the state election laws requires the counting of a considerable number of the questioned ballots, which the prevailing decision rejects as invalid and which, if counted, would require an affirmance of the judgment appealed from.

While there are other ballots and classes of ballots rejected by the majority of the court which I think should be held valid and counted, it is sufficient for my present pur-

pose to refer to but one class, viz., those ballots which are marked as required by the statute, with respect to the candidates voted for, but which contain additional and unnecessary marks, not conflicting with the voting marks, but plainly intended to emphasize and make clear the intention noted by proper marks. There are challenged votes of this class of a number large enough, independent of other challenged votes, to make a majority for Miss Evans over Mrs. Reiser, and if recognized and counted would require the judgment in favor of Miss Evans to be affirmed. These particular ballots to which I refer are all correctly marked with the statutory crosses in the appropriate places, but contain additional marks on the ballot such as horizontal, diagonal, or perpendicular marks through the names of one or more candidates not voted for, or through circles or squares over or opposite candidates not voted for. It is plain that the additional marks are all negative in character, and the ballot leaves no doubt whatever of the intention of the voter to vote for the candidates designated by the proper statutory mark. In other words, the only significance of the additional marks is to make more certain and definite the intention manifested by the affirmative statutory voting mark.

To reject such votes by judicial interpretation, and thus to defeat the plainly expressed will of the majority, is not to be justified except upon the most cogent and compelling grounds. I do not agree that our state election laws imperatively demand the rejection of the votes referred to, but on the contrary I think the tenor and effect of the statutory provisions, when all the relevant parts are considered, require that the votes described be recognized as valid and counted.

The first principle of popular government is majority rule. The integrity of government depends upon the maintenance of that principle. And when election laws are enacted the paramount purpose is to provide a means whereby voters may express themselves, and the will of the majority be ascertained. Another, but subordinate, purpose is to provide

a means whereby the voter may cast his vote secretly and independently. The laws of this state respecting elections contain no provision that a ballot containing an identification mark shall be rejected.

It is not practicable or necessary to quote in full the elaborate election laws of the state. It is sufficient to state the parts relevant to the marking and interpretation of ballots.

Primarily the statute concerning elections provides:

Section 2113, Comp. Laws 1917: "The provisions of this title shall be liberally construed, so as to carry out the intent of this title, and of political parties, nominees, and others in proceedings under this title." This is the guiding principle by which all subsequent provisions must be interpreted.

Section 2216 prescribes a cross in the circle or square as the voting mark, etc.

Section 2217 provides that ballots thus marked shall be counted for the candidates designated by the marks in the square, and for the candidates upon a ticket beneath a marked circle excluding the candidates through whose names the voter may have drawn a line, etc., and concludes with the words, "Any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected."

Section 2221 declares: "That a defective or incomplete cross mark on any ballot in ink in a proper place shall be counted, *if there be no other mark or cross in ink on such ballot indicating an intention to vote for some person or persons or set of nominations other than those indicated by the first mentioned defective cross marks.*"

Section 2222, which provides for the canvassing of the votes by the election judges, provides that "each ballot shall be read and counted separately, and every name included in a marked ticket, set, or list of nominations, or separately marked as voted for on such ballot, *where there is no conflict to obscure the intention of the voter as aforesaid,* shall be read and marked upon the tally list, before any other ballot is proceeded with."

The case is ruled by the prevailing opinion upon the sole proposition that the concluding· sentence of section 2217, that "any ballot marked by the voter in any other manner than as authorized in this chapter shall be rejected," must be literally interpreted and construed to mean that ballots

correctly marked with the prescribed voting marks in the proper places, but which contain additional insignificant and negligible marks shall be rejected. Such an interpretation in my opinion is wholly unnecessary and defeats the prime purpose of the law, and an essential principle of government. It is a narrow and strained interpretation in conflict with other provisions of the election laws. If any additional or unauthorized mark invalidates a ballot, why does section 2221 by plain implication limit the invalidating additional marks to those "indicating an intention to vote for some person or persons or set of nominations"? Or why does section 2222 require that "every name included in a marked ticket, set, or list of nominations, or separately marked as voted for on such ballot, where there is no conflict to obscure the intention of the voter as aforesaid, shall be read and marked upon the tally list"? Those provisions are in conflict with the idea that an additional mark not conflicting with the voting mark, and not obscuring the intention of the voter, shall invalidate the vote.

But the whole statute is open to a reasonable interpretation, whereby all its provisions are harmonized and given effect. Whereby the purpose of the law is subserved and the essential principle of popular government maintained. Section 2217 deals with the mark required to designate the candidate voted for. Is it not a reasonable construction that the concluding sentence of that section means that any ballot which is not marked by crosses in the square or circle, as the case may be, shall be rejected? The context of the whole chapter confirms this view, and other provisions require it. Unless the voter designates by a cross in the circle above or the squares opposite, the candidates for whom he desires to vote, his vote shall be rejected. This is all that the provisions of section 2217 can be held to mean, in view of the whole of the election laws. The provision was given effect by the trial judge when he rejected some 75 or 80 ballots which were not marked with crosses. Such interpretation brings section 2217 into harmony with the provisions of sections 2221 and 2222. All references to the subject in the

statute require the ballots to be marked with the prescribed cross, but plainly sections 2221 and 2222 permit additional marks if the ticket is properly marked with crosses, and the additional marks are not contradictory.

Section 2222 provides, as above stated, that "every name included in a marked ticket, set, or list of nominations, or separately marked as voted for on such ballot, where there is no conflict to obscure the intention of the voter as aforesaid, shall be read and marked upon the tally list," etc. This language is just as mandatory, commanding and imperative as any other words in the statute. And the plain meaning is to command and require that the ballots of the class heretofore referred to, shall be counted, for they are all marked as required by law and there is no conflict whatever to obscure the intention of the voter. To me it seems that this provision is in utter conflict with the concluding sentence of section 2217, as interpreted by the majority opinion. It is the plain duty of courts to reconcile conflicting provisions of statutory enactments, with a view of carrying out the purpose and intent of the whole law upon the subject, and to the end that justice may be done.

By limiting the meaning of the concluding sentence of section 2217, as before stated, no canon of construction is violated, and all of the provisions of the statute are given effect and the whole law harmonized. By the interpretation given those words by the majority of the court, the provision quoted of section 2222 is ignored.

There are numerous other ballots held invalid by the prevailing opinion which I think should be counted. I refer especially to those bearing evidences of erasures and obliterations, and to others which contain written words on the face of the ballot, such as "yes," "no," "straight," etc. All of such ballots which are clearly marked with the prescribed statutory cross in the appropriate circle or square, and which contain no conflicting mark, notwithstanding the erasures, obliterations, or written words, should in my opinion be counted. They are all marked as prescribed by the statute, so far as designating the candidates to be voted for

is concerned with nothing to obscure the intention of the voter or to indicate an intention to vote for any candidates other than those indicated by the statutory cross-marks.

It is not necessary in this case to count all of the votes to which reference is made, to make up a majority for Miss Evans. It is necessary, however, to reject substantially all of them to reach the result that Mrs. Reiser has the largest number of votes.

The right to vote is a sacred franchise. And a ballot honestly cast by a voter ought not to be rejected upon doubtful or questionable grounds. Every doubtful question, in the interest of honest government, ought to be resolved in favor of and not against the validity of a ballot. In my opinion there is no difficulty in the present case. The election laws, when fairly construed as a whole, require the recognition and acceptance of sufficient of the challenged votes to make a majority for Miss Evans. For these reasons I cannot agree to a reversal of the judgment. In my opinion the judgment appealed from should be affirmed.