[L. A. No. 17304.   In Bank.—September 10, 1940.]

ASA E. SCOTT, Appellant, v. CLAUD H. KENYON, Respondent.

Lindley & Higgins for Appellant.

Thomas Whelan for Respondent.

McCOMB, J., *pro tem.*—█ The above-entitled case was transferred to this court for the reason that the record disclosed that Mr. Justice Griffin, one of the justices who concurred in the opinion of the District Court of Appeal, had previously as a superior court judge ruled upon a demurrer filed in the action when the same was pending in the superior court. Mr. Justice Griffin was thus disqualified from participating in the cause. (*Knouse* v. *Nimocks*, 8 Cal. (2d) 482 [66 Pac. (2d) 438].) ·

From an examination of the evidence and the law applicable thereto we find ourselves in accord with the statement of the case and the conclusions of law reached by the District Court of Appeal, Fourth Appellate District, as stated in the opinion prepared by Mr. Presiding Justice Barnard. We therefore adopt the same as the opinion of this court. It is as follows:

''This is an appeal from a judgment denying any relief to the contestant in an election contest. Both parties hereto were candidates for the office of councilman in an election held in El Cajon, a city of the sixth class, on April 12, 1938. The only question raised is whether or not the absent voters' ballots, nine in number, should be counted for the plaintiff.

''This appeal was taken on the judgment roll alone and the only facts before us are those appearing in the findings. The court found that on the night of April 12, 1938, the election board counted the regular ballots cast, and then opened and counted the absent voters' ballots adding the result to the official tally sheet; that nine persons had cast absentee ballots; that said absent voters' ballots were in the possession of the city clerk up to April 12, 1938, at which time they were turned over by him to the inspector of the election; that thereupon the inspector of the election opened each of said ballots without permitting the spectators or other election officers to find out the name of the absent voter whose ballot was being read; that the inspector then and there removed the number on each of said ballots and announced for whom it was cast; that as each vote was announced it was entered on the official tally sheet; that after these votes were thus added the official tally sheet showed that the plaintiff had received 226 votes and the defendant 222 votes.

''The court also found that at about 11 o'clock p. m. upon said date the inspector put into the ballot box all of the

regular ballots voted at said election and all of the election supplies, and then placed in said box the nine absent voters' ballots, each in its own envelope, together with the numbers which had been removed therefrom; that he then locked the box and delivered it with the key in the lock thereof to the city clerk at about 1 o'clock a. m. on April 13, 1938; that said ballot box was retained by the city clerk in an office which was a part of his residence some distance from the city hall; that at all times while the ballot box remained there the key remained in the lock thereof; that there was an opportunity for unauthorized persons to open said ballot box and to tamper with its contents; and that the numbers which had been removed from the absent voters' ballots and placed in said ballot box were not there when it was opened by the city council on April 18, 1938, for the purpose of canvassing the result of the election.

"It was further found that on April 18, 1938, the city council canvassed the votes cast at said election, determined and declared that the plaintiff had received 217 votes and the defendant 222 votes, and declared that the defendant was elected; that in making said canvass the city council counted the votes cast by the nine absent voters and deducted these from the total results set forth by the election board on the official tally list; that the city council found as a fact that when it opened the ballot box for the purpose of canvassing the vote at said election, the nine absent voters' ballots were each contained in its own envelope and not sealed; that the city council refused to count said absent voters' ballots for the reasons that said ballots had previously had the numbers removed, that they were not in individual sealed envelopes, and that they had been opened; that immediately after said canvass by the city council all of the ballots voted at said election, including the ballots cast by the nine absent voters, together with the envelopes in which these votes had been placed, and all of the election supplies, including the roster of voters and the official tally list, were placed by the city clerk in the ballot box and the same was locked with a padlock.

"The court found that between the date of the election and the time the ballot box was opened in court the same had been tampered with and certain ballots had been removed, that when it was opened in court ten of the regular ballots cast at said election were missing and four of the absent voters'

ballots, together with the envelopes in which each was contained, had also been removed therefrom.

"The court then found that there was no evidence from which it could find that said absent ballots had been changed between the time when the same were delivered by the absentee voters to the city clerk and the time when the same were placed in the ballot box immediately following the canvass of the returns by the city council on April 18, 1938; that all nine of said absentee voters had cast their ballots for the plaintiff; that said absent voters' ballots had been opened and in the possession of unauthorized persons prior to the official canvass thereof by the city council; that an opportunity existed during said time for said absentee ballots to have been tampered with and changed but that there is no evidence from which the court could find that said absentee ballots were tampered with or changed during said time; that there was no evidence as to the identity of the person or persons who had tampered with said ballot box and who had removed therefrom the ten regular ballots and the four absent voters' ballots and their envelopes; that there was no evidence as to the time said ten regular ballots were removed from the ballot box; that 'there had been an opportunity for unlawful interference with both said ballots voted at said polls and said absent voters' ballots, and that the same had in fact been removed sometime subsequent to April 12, 1938'. It was then found that said absent voters' ballots could not be counted for anyone and that the plaintiff did not receive as many legal votes at said election as did the defendant.

"The casting of ballots by absent voters, the method of voting and the manner in which the ballots shall be counted are provided for in sections 1357 to 1364 of the Political Code. Section 1361 makes it the duty of the legislative body of a city to canvass and count the absent voters' ballots as soon as all those issued have been returned or accounted for and not later than seven days after the election. Section 1362 provides that in counting the same the legislative body shall take up the return envelopes containing such ballots, separately, in the presence of a majority of the council and of the public who may be present, and compare the signature of the voter on each such envelope with that on the registration affidavit of such voter. When the board is satisfied that the signature on the envelope is the signature of the

voter, it shall announce the name of such voter, whereupon anyone may challenge the counting of such ballot. If such challenge is overruled the board shall then open the identification envelope without unfolding the ballot, remove the number therefrom, destroy such number, and deposit the ballot in the ballot box provided for the purpose. After all such ballots are thus deposited in the box, the box shall be thoroughly shaken. The ballots shall then be taken out, one at a time, and the votes counted in the usual manner and the result tabulated under a special heading, regardless of the precincts from which the votes came. The total vote thus cast for any candidate shall then be added to the previous total for that candidate.

"It will be observed that these statutes are designed to carefully protect the absent voter in his right to a secret ballot, which is the very foundation of our election system. Great care is taken to provide that, in handling and counting the absent voters' ballots, the same secrecy which surrounds the casting of regular ballots at the polls shall be preserved and maintained. ██ In handling and counting the absent voters' ballots with which we are here concerned, practically every applicable provision of the law, including every provision designed to preserve the secrecy of the ballot was broken. Not only did the inspector who opened these ballots know for whom each of such voters cast his ballot, but each ballot was returned to its original envelope, upon which was the voter's name, and which was left unsealed. Not only is it apparent that an opportunity for fraud existed, but it clearly appears that the secrecy of these particular ballots was destroyed.

"The court found that all nine of these absentee voters cast their ballots for the plaintiff. Every presumption is in favor of this finding, in the absence of the evidence. However, it does appear that the ballots themselves could not have supported this finding since four of them had disappeared. The ballot box had actually been opened before the canvass of the votes on April 18. Ten of the ballots cast at the polls were also missing and the court found that it could not be determined when they were taken. It is possible that some of those ballots were substituted for some of those in the open envelopes supposed to contain absent voters' ballots. Whatever the facts, great doubt and uncertainty surround the entire matter. Assuming, in support of the court's find-

ing, that the nine absent voters personally appeared in court and testified that they voted for the plaintiff, the very necessity of such evidence destroys the secrecy of ballot which the statute was designed to preserve. Moreover, it does not certainly appear that the plaintiff received a majority of the votes, in any event, since ten of the votes cast at the polls were missing and it could not be determined when they disappeared. With the evidence in that condition, it could not be told whether or not the votes cast were correctly canvassed and counted by the canvassing board on April 18th.

''We have then an unfortunate situation where no attempt was made to substantially follow the law, where an opportunity for fraud existed, where it appears that the ballots were actually tampered with, and where the secrecy of the ballot was actually destroyed. It is insisted, however, that section 1364 of the Political Code provides that the provisions of that chapter shall be liberally construed in favor of the absent voter and that these nine absent voters should not be disenfranchised when it can be told for whom they voted.

■ ''Ordinarily, courts are reluctant to throw out votes where it can be told for whom the vote was intended and where the irregularity complained of is that of one of the election officials for which the voter is not to blame. At times, however, irregularities on the part of election officials are of such a kind that broader considerations, such as the rights of voters in general and the purity of elections, may demand that certain votes be not counted even where the intention of the voters can be determined. In many cases the votes of an entire precinct have been thrown out for such reasons although this has resulted in the disenfranchisement of such voters.

''The general rule is thus set forth in *Rideout* v. *City of Los Angeles,* 185 Cal. 426 [197 Pac. 74] :

'' ' . . . A distinction has been developed between mandatory and directory provisions in election laws; a violation of a mandatory provision vitiates the election, whereas a departure from a directory provision does not render the election void if there is a substantial observance of the law and no showing that the result of the election has been changed or the rights of the voters injuriously affected by the deviation.'

''In *Knowles* v. *Yates,* 31 Cal. 82, the court said:

" 'We are aware that courts have been very indulgent respecting the omissions, inadvertencies and mistakes of officers of elections, lest by exacting of them a technical compliance with the requirements of the law the citizen might be deprived of a sacred right. We are not disposed to be less indulgent in respect to the observance of forms and methods than have been the courts to which counsel have referred, but we deem it of the highest importance to the protection of the elective franchise that the law should be complied with in substance, and that those intrusted with the discharge of the duties pertaining to elections should be required so to perform them as to preserve the ballot-box pure. Others besides those who may lose their votes by the malconduct of officers of elections are concerned; and while seeking upon just principles to save the elector his vote offered and given in good faith, we are not to forget that he himself, as well as all honest people, are vitally interested in the protection of the right of suffrage, against the fraudulent machinations and devices of men whose partisan moral code bears upon its title-page the infamous maxim, ''All is fair in politics''. These observations are made to show the importance of so far adhering to the substantial requirements of the law, as to protect and preserve elections from the abuses subversive of the inherent and constitutional rights of the people.'

''Similar principles are applicable here, where there was not only opportunity for fraud, but such actual tampering with the ballots as prevented a complete review and recount, and where the rights of the voters to a secret ballot were 'injuriously affected by the deviation'. If the absent voters' law is to achieve its purpose it is of the utmost importance that its terms be substantially complied with. In the long run this is important to all voters, including any who might lose their votes in a particular case. With respect to the votes of absentee voters, it is not only important to be able to tell how they actually voted, but it is of equal importance that the provisions of law be so carried out that it cannot be told how a particular individual voted. The law permitting absent voting is carefully drawn to protect the voter in the secrecy of his ballot, and it would be largely useless if such secrecy is not maintained. If the opening of envelopes containing such ballots by unauthorized persons, and the returning of the ballots to their original envelopes so that election officers, canvassing boards, and even outsiders and spectators

may see how the individual voted, is to be permitted, the inevitable result will be that many voters will refrain from voting rather than run the risk of such a possibility. While it is unfortunate that any voter should lose his vote when it can be told for whom he intended to vote, it would be equally or more unfortunate to deprive many others of their vote by holding that a substantial compliance with this law is unnecessary. To so hold would be to destroy, by judicial decision, the secrecy with which the law has surrounded the casting of such ballots. Assuming that slight variations from the procedure provided for in the statute ought not to prevent the counting of such votes, that is not the situation here where practically every provision of the statute was violated, and where, in fact, secrecy was not maintained. We therefore hold that there must be a substantial compliance with the essential requirements of the absent voters' law with respect to the counting of the votes, and that such a substantial compliance does not here appear. It follows that the trial court correctly found and concluded that these absent voters' ballots should not be counted for anyone.''

The judgment is affirmed.

Carter, J., Edmonds, J., Spence, J., *pro tem.*, Shenk, J., and Gibson, C. J., concurred.