### 20578

STATE of South Carolina *ex rel.* James B. EDWARDS, as Governor of the State of South Carolina, Respondent, v. Sol ABRAMS, as Chairman of the Greenville Election Commission, Tom Smith, Charles Timmons, W. David Roe, and Mark B. Tolbert, as members of the Greenville Election Commission, Appellants.

(240 S. E. (2d) 643)

*Joseph H. Earle, Jr.,* and *Glen S. Baldwin,* of Greenville, *for Appellants,*

*Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Treva G. Ashworth, Asst. Attys. Gen.,* and *Harold E. Trask, Jr.,* of Columbia, *for Respondent,*

January 10, 1978.

LITTLEJOHN, Justice.

This action was commenced by the State of South Carolina, *ex relatione* James B. Edwards as Governor (Relator), against the members of the Greenville Election Commission (Commission) to test the constitutionality of § 23-400.54 :1, Code of Laws of South Carolina (1962) *as amended* (Supp. 1975), now included in the 1976 Code as § 7-13-750.

The contested statute attempted to amend the election law in 1975 and reads in pertinent part as follows:

"Notwithstanding any other provision of law, a husband and wife may enter a voting booth together for the purpose of voting and may talk with each other while voting."

Prior to the enactment of this provision, the statute provided:

"But one voter shall be allowed to enter any booth at a time, and no one except as provided herein shall be allowed to speak to a voter while in the booth preparing his ballot." This inconsistent provision is still included in § 7-30-740 of the 1976 Code.

The Commission concluded that the act was violative of Article II, §§ 1 and 10, of the South Carolina Constitution, and by formal resolution declared its intent to disregard the same.

Article II, § 1, reads as follows:

"Elections to be by secret ballot; protection of right of suffrage.

*All elections by the people shall be by secret ballot,* but the ballots shall not be counted in secret. The right of suffrage, as regulated in this Constitution, shall be protected by laws regulating elections and prohibiting, under adequate penalties, all undue influence from power, bribery, tumult, or improper conduct." (Emphasis added.)

Article II, § 10, reads as follows:

"Nominations; conduct of elections; contests, etc.

*The General Assembly shall* provide for the nomination of candidates, regulate the time, place and manner of elections, *provide for the administration of elections* and for absentee voting, *insure secrecy of voting,* establish procedures for contested elections, *and enact other provisions necessary to the fulfillment and integrity of the election process.*" (Emphasis added.)

The action was commenced by the Relator, seeking a declaratory judgment by reason of Art. IV, § 15, of the South Carolina Constitution, which requires that:

"The Governor shall take care that the laws be faithfully executed. To this end, the Attorney General shall assist and represent the Governor, . . ."

The case was tried before the Honorable James H. Price, Jr., sitting as the Court of Common Pleas for Greenville County. He held that the act was not violative of the South Carolina Constitution and ". . . permanently enjoined [the Commission] from not complying with the same until further order of a court of competent jurisdiction. The Commission has appealed.

On this appeal the Commission first submits that the lower court erred in holding that the act does not violate Art. II, §§ 1 and 10 of the constitution, quoted hereinabove. Secondly, it submits that the court erred in holding that the act does not violate Art. III, § 17, which provides that a legislative act must relate to only one subject. Our disposition of the first issue makes consideration of the second one unnecessary.

There are, generally speaking, two ways to vote: (1) by voice, and (2) by ballot. Voice votes are obviously not secret. Ballot voting implies secret voting, as was held in *State v. State Board,* 78 S. C. 461, 59 S. E. 145 (1907).

Secrecy was implied even though the constitution at that time did not use the word "secret" in connection with the word "ballot." At that time, Art. II, § 1, of the constitution provided: "All elections by the people shall be by secret ballot, . . ."

The right of suffrage is derived from our state constitution.

Article II, § 3, provides: "Every citizen possessing the qualifications required by this Constitution and not laboring under the disabilities named in or authorized by it shall be an elector." Article II, § 4, provides: "Every citizen of the United States and of this State of the age of eighteen and upwards who is properly registered shall be entitled to vote . . . ."

■ Accordingly, the right of suffrage is a constitutional right vested in those who possess the qualifications prescribed in the constitution, and such right cannot be denied or abridged by legislative enactment. It is, however, a right which the legislature may regulate under its plenary powers to any extent not expressly or impliedly prohibited by the provisions of the constitution.

■ Our constitution not only permits, but mandates the General Assembly to regulate and provide for elections. Among those things required is that the legislature ". . . insure secrecy of voting, . . ." the question thus presented is: Does the statute here under attack, which would allow husbands and wives to enter a voting booth together and discuss the ballot, violate the constitutional provisions? We think it does.

The constitutional provisions, quoted hereinabove, were ratified and became a part of South Carolina law in 1971. In 1939, the constitution provided:

"All elections by the people shall be by ballot, and elections shall never be held or the ballots counted in secret."

In commenting in the case of *Corn v. Blackwell,* 191, S. C. 183, 4 S. E. (2d) 254 (1939), this Court held that secrecy of the ballot is absolutely essential. Art. II, §§ 1 and 10, contain an even stronger mandate in compelling secrecy of the ballot.

To allow husbands and wives to vote together admittedly has considerable appeal. However, if we should sustain the right of the legislature to allow husbands and wives to enter a voting booth together, we see no rationale upon which we could deny its right to permit brothers and sisters, parents and children, consenting friends, etc., to vote together. Moreover, if the General Assembly can allow two persons to vote together, it might by like token permit three or more persons to enter a voting booth together.

Counsel for the Relator argues that the right to cast a secret ballot may be waived. There is some authority for the proposition that secrecy is a personal right granted to the voter. We think, however, that the overriding purpose of the secrecy provision is to insure the integrity of the voting process. It is calculated to secure privacy, personal independence and freedom from party or individual surveillance. It tends to promote an independent and free exercise of the elective franchise.

Counsel for the Relator argues that the right of secrecy is not absolute and cites Code § 7-13-780, which provides that a voter who needs assistance by reason of inability to read or write, or by reason of physical handicap incapacitating him from preparing a ballot, is entitled to receive assistance in voting. Without such assistance, blind persons, and some others, would be denied the right of suffrage. Either the right of suffrage must be denied or the mandate of secrecy relaxed for handicapped persons. There is no rational basis why the mandate of secrecy in the state constitution must be relaxed for two persons perfectly capable of

voting alone. We hold that § 7-13-750 of the 1976 Code is unconstitutional.

Reversed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.