[L.A. No. 31641. Aug. 4, 1983.]

ROBERT O. PETERSON, Plaintiff and Appellant, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

**COUNSEL**

John T. Holt, David W. Ault, Richard B. Ault and Ault, Midlam & Reynolds for Plaintiff and Appellant.

John W. Witt, City Attorney, Ronald L. Johnson, Chief Deputy City Attorney, and Katherine Manning So, Deputy City Attorney, for Defendants and Respondents.

Anthony L. Miller, Richard B. Maness, William P. Yee, Best, Best & Krieger, Dallas Holmes, Barton C. Gaut, Michael T. Riddell, Virginia A. Ettinger and Gerald A. Sherwin, County Counsel (San Joaquin), as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**BROUSSARD, J.**—Article II, section 7 of the California Constitution states: "Voting shall be secret." ■ The issue presented is whether the provision is violated by an election conducted by mail ballot. We conclude that such elections are valid.

After the City Council of the City of San Diego adopted an ordinance approving a lease in connection with construction of a convention center, it received a referendary petition and authorized a special municipal election to submit approval of the lease to the voters. The council provided that the election was to be conducted by mail ballot.

All city voters were mailed blank ballots approximately two weeks before the election. Voters were instructed to return their ballots to the registrar of voters either by mail or personal delivery to one of three designated locations by midnight on May 5, 1981. The ballots were to be enclosed in a special prestamped, return envelope, and voters were to place their signatures on the flap of the envelope. Locked ballot boxes were placed at three different government offices for voters to deposit their ballots if they chose not to mail them.

The signatures on the envelope flap were checked against the voter registration affidavit in the presence of public observers and deputy sheriffs as they were received, and the ballots were then locked up until after the close of the polls when the ballots were removed from the envelopes and canvassed, again in the presence of public observers and deputy sheriffs.

Before the election was held, plaintiff sought declaratory and injunctive relief challenging the validity of the election. A preliminary injunction was denied, the election conducted, and the voters rejected the lease. The trial court held that the election by mail did not violate the constitutional provision for voting secrecy, and plaintiff appeals.

■ Although the case is technically moot, appellate courts have discretion to consider a case when the issues are of continuing public importance. (*Hardie* v. *Eu* (1976) 18 Cal.3d 371, 379 [134 Cal.Rptr. 201, 556 P.2d 301]; *District Election etc. Committee* v. *O'Connor* (1978) 78 Cal.App.3d 261, 265-266 [144 Cal.Rptr. 442].) As will appear, the question presented affects the validity of state statutes and numerous elections held pursuant to them, and we conclude that the question should be addressed.

■ Plaintiff contends that to assure the integrity of the ballot article II, section 7 should be interpreted to require not only that the voter's right to secrecy be protected by election procedures but also that the voters be required to cast their votes in secret. Unless the voter is required to cast his ballot in secret, plaintiff points out, the voter may demonstrate to another person how he has cast his ballot, opening the door to fraud, coercion, intimidation, and undue influence. "By compelling the dishonest man to mark his vote in secrecy, it renders it impossible for him to prove his dishonesty and thus deprives him of the market for it." (Wigmore, The Australian Ballot System (2d ed. 1889) pp. 50-51.) On the basis of such considerations, several states have invalidated votes (*State* ex rel. *Edwards* v. *Abrams* (1978) 270 S.C. 87 [240 S.E.2d 643, 645]; *Clark* v. *Quick* (1941) 377 Ill. 424 [36 N.E.2d 563, 566; *Evans* v. *Reiser* (1931) 78 Utah

253 [2 P.2d 615, 625]), but no case has been found invalidating all absentee or mail balloting.[1]

As to secrecy, absentee voting in polling place elections and voting by mail in all mailed ballot elections are substantially the same. In absentee voting the voter must apply for a ballot. The voter marks the ballot and returns it in person or by mail to the clerk or to a precinct polling place. (Elec. Code, §§ 1002, 1013-1014.) In mailed ballot elections the clerk mails each voter a ballot, and the voter marks it and returns it to the clerk by mail or in person or may mark it in the clerk's office and leave it with the clerk. Elections Code section 1350 requires that mail ballot elections be conducted in accordance with the procedures used for absentee voting.

Voting by mail has existed in California for 60 years. At the November 7, 1922, General Election the California Constitution was amended to permit absentee voting. (Prop. 22.)

Between 1930 and 1972, article II, section 1 of our state Constitution provided in part: "[T]he Legislature may, by general law, provide for the casting of votes by duly registered voters who expect to be absent from their respective precincts or unable to vote therein, by reason of physical disability, on the day on which any election is held." In addition, article II, section 5 until 1972 gave the Legislature broad authority to regulate the method of voting, providing: "All elections by the people shall be by ballot or by such other method as may be prescribed by law; provided, that secrecy in voting is preserved."

Pursuant to the authority conferred by these provisions, legislation was enacted as early as 1923 to permit absentee voting by mailed ballot. (Stats. 1923, ch. 283, § 1, pp. 586-587.)

In 1970, the California Constitution Revision Commission proposed amendments to simplify the language of article II which included deletion of the absentee voting authorization and a general provision directing the Legislature to provide for "registration and free elections." The proposed revisions were accompanied by comments that the purpose was to simplify the language of the section and to leave "to legislative prescription such matters as state and local residence requirements, removal of voters from one precinct or county to another, registration, and absentee balloting." The comment also pointed out that the matters already appear in statutory form in the Elections Code and that the Legislature is compelled by the

---

[1]Plaintiff does not challenge the canvassing procedures; only the method by which the vote is cast.

revised constitutional language "to provide for the election details such as the method of voting." (Cal. Const. Revision Com., Proposed Revision (1970) pt. II, pp. 17, 18.)

Although some changes were made in the recommended constitutional provisions, the recommendations were generally adopted, including provision for secrecy, deletion of the absentee ballot provisions, and direction to the Legislature to provide for "registration and free elections." (See present art. II, § 3.)

Over the years the Legislature extended the right of absentee voting to those serving in the military, the ill, the physically handicapped, those whose religion prevented travel to the polling place, and those residing a substantial distance from the polling place. (See Gaylord, *History of the California Election Laws,* 28C West's Ann. Elec. Code (1977 ed.) p. 42.) In 1978, the Legislature extended to every registered voter the right to vote by absentee ballot, regardless of the reason for not traveling to the polling place. (Stats. 1978, ch. 77, § 2, p. 213.)

In 1965 mail ballot voting was authorized for new residents and in small precincts. (Stats. 1965, chs. 929, 2004.) Mail ballot elections are presently authorized in a wide variety of situations by Elections Code sections 1340-1352, 23511.1 and city charters.

The use of absentee ballots and mail ballot elections is widespread. The Secretary of State informs us that 6.2 percent of the electorate cast absentee ballots in the 1980 General Election or almost 550,000 voters. She also states that there were at least 270 mailed ballot elections conducted in California between 1978 and the first half of 1982 in 32 counties with approximately 1 million eligible voters.

Mail ballot elections serve two purposes as compared to voting-booth elections. First, voting by mail is often more convenient than voting at the polling place and mail voting increases voter participation. Second, mail balloting can provide significant economies in the administration of elections permitting agencies to call special elections with relatively little cost to ascertain voter sentiment on pending issues. (Bolinger, *Election Law During the 60's & 70's,* 28C West's Ann. Elec. Code (1977 ed.) pp. 126-130.)

The right to vote is, of course, fundamental (e.g., *Thompson* v. *Mellon* (1973) 9 Cal.3d 96, 99 [107 Cal.Rptr. 20, 507 P.2d 628]; *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 721 [94 Cal.Rptr. 602, 484 P.2d 578]), and restrictions on exercise of the franchise will be strictly scrutinized and invalidated unless promotive of a compelling governmental interest (*Dunn* v.

*Blumstein* (1972) 405 U.S. 330, 337 [31 L.Ed.2d 274, 281, 92 S.Ct. 995]; *Young* v. *Gnoss* (1972) 7 Cal.3d 18, 22 [101 Cal.Rptr. 533, 496 P.2d 445]). As pointed out in *Otsuka* v. *Hite* (1966) 64 Cal.2d 596 [51 Cal.Rptr. 284, 414 P.2d 412], the United States Supreme Court " 'has stressed on numerous occasions, "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds* v. *Sims,* 377 U.S. 533, 555 [84 S.Ct. 1362, 1378, 12 L.Ed.2d 506, 523]. The right is fundamental "because preservative of all rights." *Yick Wo* v. *Hopkins,* 118 U.S. 356, 370 [6 S.Ct. 1064, 1071, 30 L.Ed. 220, 226].' (*Harman* v. *Forssenius* (1965) 380 U.S. 528, 537 [85 S.Ct. 1177, 14 L.Ed.2d 50].) Such matters are 'close to the core of our constitutional system' (*Carrington* v. *Rash* (1965) *supra* 380 U.S. 89, 96 [13 L.Ed.2d 675, 680, 85 S.Ct. 775]) and 'vital to the maintenance of democratic institutions' (*id.* at p. 94, quoting from *Schneider* v. *New Jersey,* 308 U.S. 147, 161 [60 S.Ct. 146, 84 L.Ed. 155]). (See also, *United States* v. *Mississippi* (1965) 380 U.S. 128, 144 [85 S.Ct. 808, 13 L.Ed.2d 717] ['the right to vote in this country is . . . precious']; *Louisiana* v. *United States* (1965) 380 U.S. 145, 153 [85 S.Ct. 817, 13 L.Ed.2d 709] ['The cherished right of people in a country like ours to vote']; and, finally, the recent case of *Harper* v. *Virginia State Board of Elections* (1966) *supra,* 383 U.S. 663 [86 S.Ct. 1079, 1083, 16 L.Ed.2d 169, 175] ['the right to vote is . . . precious, . . . fundamental'].) Rather than being a creature of the California Constitution, the right of suffrage in this as in every other state of the Union flows from the wellsprings of our national political heritage." (64 Cal.2d at pp. 601-602.)

The fundamental importance of the right to vote persuades us that reasonable efforts by the Legislature to facilitate and increase its exercise must be upheld. Too often citizens faced with numerous pressures on their time and with the inconvenience of appearing at the polling place have chosen to forego exercise of the precious right. Reducing or eliminating the burdens and inconvenience of voting and thereby increasing voter participation is not only a proper subject of legislation but also fundamental to the maintenance of our representative government.

 We are satisfied that the secrecy provision of our Constitution was never intended to preclude reasonable measures to facilitate and increase exercise of the right to vote such as absentee and mail ballot voting. We may not assume that the secrecy provision was designed to serve a purpose other than its obvious one of protecting the voter's right to act in secret, when such an assumption would impair rather than facilitate exercise of the fundamental right.

Our construction of the secrecy provision is supported by the history of the constitutional provisions governing voting. For many years, provision

for absentee voting and the secrecy provision were both in the Constitution with neither stated as an exception or limitation on the other. The deletion of the absentee provision which occurred in 1972 was proposed by the Constitution Revision Commission not in order to prevent mail voting but because provision for absentee balloting should be regulated by the Legislature, reflecting the belief that there was nothing inconsistent with absentee balloting and the retained secrecy provision. Recently, the Court of Appeal concluded that absentee voting procedures do not violate the secrecy provision of the Constitution. (*Beatie* v. *Davila* (1982) 132 Cal.App.3d 424, 431 [183 Cal.Rptr. 179].)

While mail balloting may provide a greater opportunity for fraud than voting booth elections, there has been no showing of significant wrongdoing in absentee or mail ballot voting. Furthermore, the Legislature has adopted other measures to protect the integrity of elections. It is a crime to interfere with a voter lawfully exercising the right to vote at an election (Elec. Code, § 29612), to offer employment or any gift or lodging as an inducement for voting or refraining from voting (Elec. Code, §§ 29620-29624), to coerce or to intimidate any voter (Elec. Code, § 29630) or to interfere with the secrecy of voting (Elec. Code, § 29645). This court has recognized that the statutory procedures "are designed to carefully protect the absent voter in his right to a secret ballot." (*Scott* v. *Kenyon* (1940) 16 Cal.2d 197, 201 [105 P.2d 291].) In the circumstances, potential for fraud in mail voting is not sufficient to warrant invalidation of statutes and charter provisions reasonably designed to facilitate and increase exercise of the franchise.

Plaintiff also urges that while there may be a compelling state interest in permitting absentee balloting because otherwise absentees would be unable to vote, there is no such interest justifying mail ballot voting. He concludes that absentee balloting might be upheld on this basis but that mail ballot voting may not be upheld. However, the compelling interest, as we have seen, is to secure citizen participation in the maintenance of representative government, and that interest is equally applicable to absentee and mail ballot voting.

We conclude that the secrecy provision does not preclude voting by mail. The judgment is affirmed.

Bird, C. J., Mosk, J., Richardson, J., and Kaus, J., concurred.

**GRODIN, J.,** Concurring.—Plaintiff voices a concern which I share. It is a concern with the integrity of the election process, and it extends beyond the proposition that voters should be free to cast their ballots in secret. As the Supreme Court of South Carolina has said, in an opinion striking down

legislation which authorized a husband and wife to enter the polling booth together: "There is some authority for the proposition that secrecy is a personal right granted to the voter. We think, however, that the overriding purpose of the secrecy provision [in the South Carolina Constitution][1] is to insure the integrity of the voting process. It is calculated to secure privacy, personal independence and freedom from party or individual surveillance. It tends to promote an independent and free exercise of the elective franchise." (*State* ex rel. *Edwards* v. *Abrams* (1978) 270 S.C. 87 [240 S.E.2d 643, 645-646].) Courts of other states have expressed similar views.[2]

Such concerns are implicated, I believe, in this state's constitutional mandate that "voting shall be secret." The problem is not simply one of purchasing votes, though a market in that commodity is far more likely if the buyer can see what he is getting. The problem includes the potential for more subtle forms of coercion. To the extent that important elections are conducted by means which permit persons other than the voter to observe the ballot as it is cast, it is inevitable that political and special interest groups will be tempted to "assist" voters in casting their ballots, perhaps at organizational parties at which the marking and mailing of ballots constitute a group activity. If permitting a husband and wife to be together in the polling booth violates a constitutional requirement for secret voting, can it reasonably be said that no constitutional question exists when the voter may be accompanied in the marking of his ballot by assorted friends and well-wishers?

To say that the constitutional mandate for secrecy in voting is implicated when votes are cast away from the polling booth is not to say that it is violated. I agree with the majority that the historical development of absentee voting in this state makes quite clear a constitutional intent to permit the Legislature discretion in providing for absentee ballots. Thus, I would not read article II, section 7 as an absolute requirement that all voting take place at the polling booth. Rather, I would read it as requiring that departures from that principle be justified in terms of the values of the election process.

In the case of absentee ballots, the fundamental nature of the right to vote provides the requisite justification. If a voter would for any reason have

---

[1]"All elections by the people shall be by secret ballot, but the ballots shall not be counted in secret. The right of suffrage, as regulated in this Constitution, shall be protected by laws regulating elections and prohibiting, under adequate penalties, all undue influence from power, bribery, tumult, or improper conduct." (S.C. Const., art. II, § 1.)

[2]For example, *Evans* v. *Reiser* (1931) 78 Utah 253 [2 P.2d 615, 625] ("[a] person is not likely to enter into an agreement with a voter to pay for his vote unless such person has a way of ascertaining whether or not the voter has cast his ballot as agreed"); *Clark* v. *Quick* (1941) 377 Ill. 424 [36 N.E.2d 563, 566] ("[o]ur system requires not only that the ballot must be secret, but that the voter himself must be given no opportunity to satisfy some other person how he has voted").

difficulty getting to the polls, a system which permits him to vote by absentee ballot serves that fundamental interest. At the same time, the relatively small percentage of voters who are likely to vote by absentee ballot in any election constitutes some safeguard against the risks inherent in voting outside the polling place.

The same justification does not exist in the case of mail ballots. So long as absentee ballots are available, one cannot speak meaningfully of a person's right to vote being limited by having to go to the polls. Rather, the wholesale departure from polling place voting which mail balloting represents can be justified only by a different interest—the public interest in increasing voter participation. It is voter apathy, not disability, for which mail balloting is prescribed as an antidote.

I am prepared to accept that justification in this case, where what is involved is a special local election on an issue as to which legitimating consensus is both significant and difficult to obtain in an election conducted by traditional means. I therefore concur in the court's opinion, but would reserve judgment as to the constitutionality of mail ballots in broader contexts.

Reynoso, J., concurred.