[No. C050528. Third Dist. July 11, 2006.]

THERESA BRIDGEMAN et al., Plaintiffs and Respondents, v.
BRUCE McPHERSON, as Secretary of State, etc., Defendant and Appellant.

COUNSEL

Bill Lockyer, Attorney General, Louis R. Mauro, Assistant Attorney General, Christopher E. Krueger and Douglas J. Woods, Deputy Attorneys General, for Defendant and Appellant.

Law Office of Scott J. Rafferty and Scott J. Rafferty for Plaintiffs and Respondents.

OPINION

**SIMS, Acting P. J.**—Bruce McPherson, as Secretary of State of the State of California (the Secretary), appeals from a judgment and peremptory writ of mandate requiring the Secretary to refrain from enforcing the portion of Elections Code section 3103.5,[1] which requires a special absentee voter[2] to sign an oath "that by returning my voted ballot by facsimile transmission I have waived my right to have my ballot kept secret." (§ 3103.5.) Following a hearing on a petition for writ of mandate filed by Theresa Bridgeman, Edwin Lau, and John Doe (the voters), the trial court concluded the oath violated California's constitutional provision that "[v]oting shall be secret." (Cal. Const., art. II, § 7 (article II, section 7).) Because the oath could not be severed from the statute, the trial court ruled ballots cast by facsimile (fax) under section 3103.5 cannot be counted.

The Secretary appeals.

We shall conclude the constitutional guarantee of secret ballot must be balanced against the constitutional right of voters to cast a vote. We further conclude we should respect the Legislature's determination that fax voting is necessary to allow some voters overseas to vote in California. This is constitutional.

The voters allege improprieties in the fax voting system but have failed to adduce substantial *evidence* in support of their allegations. We shall therefore reverse the judgment.

---

[1] Undesignated statutory references are to the Elections Code.

[2] " 'Special absentee voter' means an elector who is any of the following: [¶] (1) A member of the armed forces of the United States or any auxiliary branch thereof. [¶] (2) A citizen of the United States temporarily living outside of the territorial limits of the United States or the District of Columbia. [¶] (3) Serving on a merchant vessel documented under the laws of the United States. [¶] (4) A spouse or dependent of a member of the armed forces or any auxiliary branch thereof." (§ 300, subd. (b).)

## DISCUSSION

*Section 3103.5*

The statute at issue in this appeal, section 3103.5, became effective September 27, 2004, and by its own terms will be repealed on January 1, 2009, unless the Legislature extends or deletes the expiration date. (§ 3103.5, subd. (c); Stats. 2004, ch. 821, §§ 5, 7.) The statute provides: "A special absentee voter who is temporarily living outside of the territorial limits of the United States or the District of Columbia may return his or her ballot by [fax] transmission. To be counted, the ballot returned by [fax] transmission must be received by the voter's elections official no later than the closing of the polls on election day and must be accompanied by an identification envelope [*sic*] containing all of the information required by Section 3011[3] and an oath of voter declaration in substantially the following form:

### "OATH OF VOTER

"I, ____, acknowledge that by returning my voted ballot by [fax] transmission I have waived my right to have my ballot kept secret. Nevertheless, I understand that, as with any absent voter, my signature, whether on this oath of voter form or my identification envelope, will be permanently separated from my voted ballot to maintain its secrecy at the outset of the tabulation process and thereafter.

"[Voter's residence address, mailing address, e-mail address, fax transmission number, county of residence, and statement that voter will not apply for absentee ballot from any other jurisdiction for the same election.]

---

[3] Section 3011 provides:

"The identification envelope shall contain the following:

"(a) A declaration, under penalty of perjury, stating that the voter resides within the precinct in which he or she is voting and is the person whose name appears on the envelope.

"(b) The signature of the voter.

"(c) The residence address of the voter as shown on the affidavit of registration.

"(d) The date of signing.

"(e) A notice that the envelope contains an official ballot and is to be opened only by the canvassing board.

"(f) A warning plainly stamped or printed on it that voting twice constitutes a crime.

"(g) A warning plainly stamped or printed on it that the voter must sign the envelope in his or her own handwriting in order for the ballot to be counted.

"(h) A statement that the voter has neither applied, nor intends to apply, for an absent voter's ballot from any other jurisdiction for the same election.

"(i) The name of the person authorized by the voter to return the absentee ballot pursuant to Section 3017.

"(j) The relationship to the voter of the person authorized to return the absentee ballot.

"(k) The signature of the person authorized to return the absentee ballot."

"I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

"[Date and signature of voter.]

"YOUR BALLOT CANNOT BE COUNTED UNLESS YOU SIGN THE ABOVE OATH AND INCLUDE IT WITH YOUR BALLOT AND IDENTIFICATION ENVELOPE, ALL OF WHICH ARE RETURNED BY [FAX] TRANSMISSION.

"(2) Notwithstanding the voter's waiver of the right to a secret ballot, each elections official shall adopt appropriate procedures to protect the secrecy of absentee ballots returned by [fax] transmission.

"(3) Upon receipt of an absentee ballot returned by [fax] transmission, the elections official shall determine the voter's eligibility to vote by comparing the signature on the return information with the signature on the voter's affidavit of registration. The ballot shall be duplicated and all materials preserved according to procedures set forth in this code.

"(4) Notwithstanding paragraph (1), a special absentee voter who is permitted to return his or her ballot by [fax] transmission is, nonetheless, encouraged to return his or her ballot by mail or in person if possible. A special absentee voter should return a ballot by [fax] transmission only if doing so is necessary for the ballot to be received before the close of polls on election day.

"(b) The Secretary of State shall make a recommendation to the Legislature, no later than December 31, 2008, on the benefits and problems, if any, derived from permitting qualified special absentee voters to return their ballots by [fax] transmission, and shall include in the recommendation the number of ballots returned by [fax] transmission pursuant to this section." (§ 3103.5, subds. (a), (b).)

The Legislative Counsel's Digest states as follows concerning enactment of section 3103.5:

"Existing law permits an absent voter to return a ballot by mail to the elections official from whom it came or by personal delivery to the elections official or to a precinct board member at any polling place within the jurisdiction.

"This bill would permit a special absentee voter who is temporarily living outside of the territorial limits of the United States or the District of

Columbia to return his or her ballot by [fax] transmission to the elections official. The ballot would have to be received by the closing of the election day polls and accompanied by an identification envelope and an oath of voter declaration in a prescribed form. A special absentee voter would be encouraged to return his or her ballot by [fax] transmission only when necessary for the ballot to be received on election day. This bill would require that the special absentee voter agree to waive his or her right to a secret ballot, but the elections official would nevertheless be required to adopt appropriate procedures to protect the secrecy of ballots returned by [fax] transmission. The elections official would be required to determine the voter's eligibility to vote by comparing the voter's signature from the materials returned by [fax] transmission to the signature on the voter's affidavit of registration.

"This bill would require the Secretary of State to report to the Legislature by December 31, 2008, regarding the number of ballots returned by [fax] transmission and the benefits and problems resulting from the return of ballots by [fax] transmission." (Legis. Counsel's Dig., Assem. Bill No. 2941 (2003–2004 Reg. Sess.) Stats 2004, ch. 821.)

The legislative history of the enactment of section 3103.5 includes the following: "Members in our military should be afforded the chance to have their votes counted and voices heard. It is difficult to register overseas voters and get their ballots to them on time in general. In addition, 'special absentee voters,' such as military overseas voters and their families, have traditionally had a difficult time obtaining ballots, voting and returning their ballots in time to be counted. With the increased number of military personnel serving on various fronts around the world, this problem must be remedied. [¶] AB 2941 would make it possible for a special absentee voter, who is a member of the armed forces of the United States or any auxiliary branch thereof, or a spouse or dependent thereof, and who is temporarily living outside of the United States, who are unable to return their absentee ballots by mail in a timely manner to return them by fax to their county registrar." (Assem. Com. on Elections, Redistricting and Constitutional Amendments, Bill Analysis of Assem. Bill No. 2941 (2003–2004 Reg. Sess.) Apr. 20, 2004, pp. 2–3.)

Because a faxed ballot must be accompanied by "an identification envelope" (§ 3103.5, subd. (a)(1)), and because the "identification envelope" contains the name and address of the voter (fn. 3, *ante*), someone inspecting an incoming fax ballot will know the identity of the person casting the faxed ballot.

Nonetheless, we are of the view that the Legislature may authorize voting by fax for citizens outside the country, and may require fax voters to

waive[4] their right to a secret ballot, without violating the secret ballot guarantee of article II, section 7.

■ Our Supreme Court has consistently held that the constitutional guarantee of a secret ballot should not stand in the way of measures that are reasonably necessary to ensure that citizens are able to cast a vote.

For example, in *Peterson v. City of San Diego* (1983) 34 Cal.3d 225 [193 Cal.Rptr. 533, 666 P.2d 975] (*Peterson*), our Supreme Court held the constitutional provision that voting shall be secret was not violated by a municipal election conducted entirely by mail ballot. The plaintiff argued article II, section 7, should be interpreted to require not only that the voter's right to secrecy be protected by election procedures but also that the voters be required to cast their votes in secret. (*Id.* at p. 227.) The plaintiff argued that, unless the voter was required to cast his ballot in secret (at a polling place), the voter may demonstrate to another person how he voted (and therefore could sell his vote). " 'By compelling the dishonest man to mark his vote in secrecy, it renders it impossible for him to prove his dishonesty and thus deprives him of the market for it.' " (*Peterson, supra*, 34 Cal.3d at p. 227, citing Wigmore, The Australian Ballot System (2d ed. 1889) pp. 50–51.)

*Peterson, supra*, 34 Cal.3d 225, said mail ballot elections serve two purposes: (1) it is more convenient than going to a polling place, and (2) it saves administrative expenses. (*Id.* at p. 229.)

■ "The right to vote is, of course, fundamental [citations], and restrictions on exercise of the franchise will be strictly scrutinized and invalidated unless promotive of a compelling governmental interest [citations]. . . . 'The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government.' [Citation.] The right is fundamental 'because preservative of all rights.' [Citations.] . . . Rather than being a creature of the California Constitution, the right of suffrage in this as in every other state of the Union flows from the well-springs of our national political heritage.' [Citation.]" (*Peterson, supra*, 34 Cal.3d at pp. 229–230.)

*Peterson* said: "The fundamental importance of the right to vote persuades us that reasonable efforts by the Legislature to facilitate and increase its exercise must be upheld. Too often citizens faced with numerous pressures on their time and with the inconvenience of appearing at the polling place have chosen to forego exercise of the precious right. Reducing or eliminating the

---

[4] We reject the Secretary's argument that section 3103.5's oath is a mere acknowledgement of risks inherent in fax transmission rather than a waiver. On its face, the oath is a waiver.

burdens and inconvenience of voting and thereby increasing voter participation is not only a proper subject of legislation but also fundamental to the maintenance of our representative government.

> *"We are satisfied that the secrecy provision of our Constitution was never intended to preclude reasonable measures to facilitate and increase exercise of the right to vote such as absentee and mail ballot voting. We may not assume that the secrecy provision was designed to serve a purpose other than its obvious one of protecting the voter's right to act in secret, when such an assumption would impair rather than facilitate exercise of the fundamental right."* (*Peterson, supra,* 34 Cal.3d at p. 230, italics added.)

Similarly, in *Wilks v. Mouton* (1986) 42 Cal.3d 400 [229 Cal.Rptr. 1, 722 P.2d 187] (*Wilks*), the Supreme Court rejected an attempt to invalidate a municipal incorporation election on the grounds that third parties (1) assisted some voters in completion of absentee ballots, and (2) delivered the completed ballots to the elections official. Some of the third parties were members of a citizens' committee formed to promote the incorporation, and one appeared on the ballot as a candidate for city council. (*Id.* at pp. 406–407, 405, fn. 3.) The trial court found the assistance was given at the request of the voters, each ballot was completed in the presence of the voter, and there was no fraud, coercion, or tampering with ballots. (*Id.* at pp. 406–408.)

*Wilks, supra,* 42 Cal.3d 400, cited *Peterson, supra,* 34 Cal.3d 225, as holding that the constitutional provision that voting be secret "does not mean that every ballot including absentee and mailed ballots must actually be cast in secret . . . ." (*Wilks, supra,* 42 Cal.3d at p. 408.) *Wilks* quoted from *Peterson*: " 'We are satisfied that the secrecy provision of our Constitution was never intended to preclude reasonable measures to facilitate and increase exercise of the right to vote such as absentee and mail ballot voting. We may not assume that the secrecy provision was designed to serve a purpose other than its obvious one of protecting the voter's right to act in secret, when such an assumption would impair rather than facilitate exercise of the fundamental right.' " (*Wilks, supra,* 42 Cal.3d at pp. 408–409.)

As noted by the voters in our case, the Legislature, in express response to *Wilks, supra,* 42 Cal.3d 400, amended the pertinent statute to clarify that personal delivery of completed absentee ballots must be by the voter (or by family members specified in the amended statute). (Stats. 1987, ch. 22, § 1, pp. 59–60; *Gooch v. Hendrix* (1993) 5 Cal.4th 266, 279–280, fns. 8 & 9 [19 Cal.Rptr.2d 712, 851 P.2d 1321] [absentee ballots collected by political association could not be counted regardless of whether the absentee voters gave the association permission to return the ballots on their behalf].) The Legislature stated its intent was to clarify potential ambiguity in *Wilks* and to

declare that the Legislature's intent is and always was to give mandatory effect to the statute concerning who could deliver absentee ballots. (Stats. 1987, ch. 22, § 1, pp. 59–60.) The legislative amendment thus does not affect our reliance on *Wilks*.

▮ Here, the legislative history of section 3103.5 shows the statute was animated by a desire to allow military families stationed overseas to cast a vote in circumstances where they would otherwise be disenfranchised. Section 3103.5, subdivision (a), provides in part, "A special absentee voter should return a ballot by [fax] transmission *only if doing so is necessary for the ballot to be received before the close of polls on election day.*" (Italics added.) Fax voting therefore allows citizens to vote who could not vote otherwise. In our view, given a choice between fax voting and not voting at all, citizens should be able to choose to vote by fax and to waive their right to a secret ballot. In such circumstances, voting by fax is a "reasonable measure . . . to facilitate and increase exercise of the right to vote . . . ." (*Peterson, supra,* 34 Cal.3d at p. 230.)

In their respondent's brief in this court, the voters allege: "The President designated the Secretary of Defense (DoD) to assist over-seas voters. DoD selected Omega Technologies, a privately-held 'data warehouse' with close ties to a national political party, to forward these ballots to county registrars in these states. In violation of federal law, and despite the fact that California registrars do not require the information, Omega solicited social security numbers of persons using this service."

On appeal from a judgment in an action for traditional mandamus, pursuant to Code of Civil Procedure section 1085, as is the case here, we review the record to determine if the judgment is supported by substantial *evidence. (City of Pasadena v. State of California* (1993) 14 Cal.App.4th 810, 821 [17 Cal.Rptr.2d 766].)

We agree with the Attorney General that these troublesome allegations are not supported by substantial evidence in the record. Nor were these allegations pleaded in the petition for writ of mandate and admitted by the Secretary, as the voters' counsel asserted at oral argument. Rather, the allegations are found in memoranda of points and authorities submitted by the voters and in a newspaper editorial appended to a declaration by the voters' counsel.

▮ The unsworn memoranda of points and authorities do not constitute evidence. (*Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1090 [223 Cal.Rptr. 410].) And the hearsay editorial is not the sort of "solid" evidence that will support a judgment. (See, e.g., *Roddenberry v. Roddenberry* (1996)

44 Cal.App.4th 634, 651 [51 Cal.Rptr.2d 907] [" 'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value"].)

Even assuming the newspaper editorial could be considered for its truth, nothing in the editorial links California fax voting with Omega Technologies.

No substantial evidence in this record shows improper involvement of a private corporation in California's fax voting scheme.

We note the record suggests an overseas ballot transmitted by fax may pass through a third party before it reaches the county elections official. Thus, the trial court granted the Secretary's request for judicial notice of a portion of a 2004–2005 voting assistance guide prepared by the Federal Voting Assistance Program, which says (in its discussion of the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. § 1973ff et seq.) that ballots "for any state" may be transmitted by fax through three specified fax numbers. The judgment expresses the trial court's concern about this intermediary step before the ballot reaches county elections officials. Nevertheless, there is no evidence in the record as to who operates the fax numbers and certainly no evidence of wrongdoing. The burden of producing evidence of these matters was upon the voters, because, "[i]t is presumed that official duty has been regularly performed." (Evid. Code, § 664.)

■ The voters argue the section 3103.5 oath gives any fax operator a "license to publicize how voters voted." We disagree. Despite the oath, California elections officials are required by section 3103.5 to adopt procedures to protect the secrecy of ballots sent by fax. Federal law presumably imposes constraints on the handling of ballots (e.g., 42 U.S.C. § 1973gg-10), but since the voters failed to show evidence of who operates the fax numbers for overseas voters, it cannot be determined what constraints apply.

■ The voters note the trial court found the waiver in the section 3103.5 oath is not voluntary, because voters have no choice but to sign the oath if they want their vote to be counted, and availability of alternative transmission methods is theoretical. The Secretary replies the question of voluntariness was not litigated in the trial court, and the voters rely on argument rather than evidence. We assume for purposes of this appeal that no alternative transmission methods are available. (§ 3103.5 [special absentee voter should return a ballot by fax transmission only if doing so is necessary for the ballot to be received before the close of polls on election day].) The unavailability of other transmission methods does not render involuntary the waiver required by section 3103.5.

■ The voters argue that voters who choose not to waive their right to ballot secrecy are disenfranchised. However, state regulation of elections

" 'inevitably affects—at least to some degree—the individual's right to vote . . . .' " (*Peace & Freedom Party v. Shelley* (2004) 114 Cal.App.4th 1237, 1246 [8 Cal.Rptr.3d 497].) As a practical matter, there must be regulation of elections to avoid chaos. (*Ibid.*) The state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions. (*Ibid.*) In determining constitutionality of the restriction, the court considers the character and magnitude of the asserted injury to the rights protected by the constitutional provision invoked by the plaintiff. (*Id.* at p. 1245.) The court then must identify and evaluate the precise interests put forward by the state as justifications for the burden imposed by its rule. (*Ibid.*) The court must not only determine the legitimacy and strength of each of those interests; it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. (*Ibid.*)

Here, the voters argue the character and magnitude of the constitutional right is significant: Every qualified overseas voter has a right to vote, to vote secretly, and to have the vote counted. However, the issue is the character and magnitude *of the asserted injury.* (*Peace & Freedom Party v. Shelley, supra,* 114 Cal.App.4th at p. 1245.) Section 3103.5 initially broadens rather than burdens voting rights because it anticipates that, if fax voting is not allowed, the voter will not be able to vote at all. Additionally, the state's regulatory interest in requiring the oath is clear. As argued by the Secretary, the section 3103.5 oath assures among other things that (inadvertent)[5] disclosure of the ballot during the fax process does not subject the vote to disqualification (adding a level of uncertainty to the election process). We reject the voters' response that section 3103.5 is overbroad because the risk of inadvertent disclosure while placing a fax ballot in a security envelope is no greater than the risk that occurs when any absentee ballot is removed from the security envelope.

In a footnote, the voters suggest we should affirm the judgment on other grounds, by overturning the trial court's rejection of the voters' argument that the section 3103.5 oath is inconsistent with and violates the standard federal oath. We disregard this undeveloped argument presented in a footnote. (*Placer Ranch Partners v. County of Placer* (2001) 91 Cal.App.4th 1336, 1343, fn. 9 [111 Cal.Rptr.2d 577].)

We conclude no substantial evidence supports the judgment in favor of the voters.

---

[5] We express no view on any intentional disclosure or tampering by third parties, matters on which no substantial evidence was adduced in this case.

## DISPOSITION

The judgment is reversed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 27(a)(4).)

Raye, J., and Hull, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 20, 2006, S145735.